Argued and submitted March 3, affirmed October 21,
petition for rehearing denied November 20, 1980

## CITY OF KLAMATH FALLS,
*Respondent-Petitioner,*

*v.*

## WINTERS, et al,
*Appellants-Petitioners.*

## (NO. 76-259 C, CA 12533, SC 26587, 26611)

619 P2d 217

Richard B. Thierolf, Jr., Klamath Falls, and Rex

E.H. Armstrong, Portland, argued the cause for appellants-petitioners. With them on the briefs were Jerry A. Jacobson, Klamath Falls, and Carl R. Neil, Portland.

B.J. Matzen, City Attorney, Klamath Falls, argued the cause and filed the briefs for respondent-petitioner.

Mark E. Pilliod, Deputy City Attorney, Beaverton, filed a brief Amicus Curiae.

Before Denecke, Chief Justice, and Tongue, Howell, Lent, Peterson and Tanzer, Justices.

TONGUE, J.

## TONGUE, J.

This is a criminal case involving two defendants, Thomas Winters and his sister, Elena Winters. Both defendants were charged and convicted in the Klamath Falls Municipal Court of disorderly conduct. Thomas Winters was further charged and convicted of resisting arrest. Both charges were based upon violations of Klamath Falls municipal ordinances.[1]

■     Defendants appealed to circuit court where their case was tried *de novo* pursuant to ORS 221.390.[2] Both defendants requested that the jury be instructed that the defendants had a right to resist the use of excessive force by police officers in making an arrest. That instruction was not given. The circuit court jury returned a verdict of guilty. That court then imposed upon defendant Elena Winters a $53 fine and 10 days in jail with 9 days suspended - the same sentence as had been imposed by the municipal court. Defendant Thomas Winters received a more severe sentence. The municipal court had sentenced him to 15 days in jail with 12 days suspended, and a $53 fine. The circuit court sentenced him to 30 days in jail, with no days suspended, plus a $450 fine on the resisting arrest conviction and a $53 fine on the disorderly conduct

---

[1] Resisting arrest - ch 31, § 15.1 of the Code of the City of Klamath Falls; Disorderly conduct - ch 31, § 6 of the same code.

[2] ORS 221.390 provides:

"(1) When any person convicted in a municipal court appeals to the circuit court as provided in ORS 221.350 and 221.360, such person shall be tried in the circuit court pursuant to the statutes which prescribe the procedure for trial of violations of the criminal statutes of the state, except that the prosecution shall be handled by an attorney provided by the city from the municipal court from which the appeal was taken.

"* * * * *

"(3) Upon a verdict of guilty the circuit judge may impose any sentence within the limits prescribed by the charter or ordinance for violation of which the conviction was had, and if a fine is imposed, it shall be paid to the county clerk and by him remitted, on or before the 10th day of the following month, to the proper city officer.

"(4) This section does not apply where the appeal involves only an issue of constitutionality of the charter or ordinance."

conviction. Defendants then appealed to the Court of Appeals, citing as error the circuit court's failure to give the requested jury instructions and the circuit court's imposition of a more severe sentence against defendant Thomas Winters.[3]

---

[3] Following their conviction in circuit court, defendants instructed their attorney to appeal. Their attorney filed motions for appointment of counsel and for a transcript for an appellant without funds. He also prepared a notice of appeal which he served on the city attorney, district attorney, county clerk and circuit court reporter on November 19, 1976, well within the 30-day period required by ORS 138.071. That attorney, however, neglected to file the notice of appeal with the Court of Appeals.

Defendant then petitioned the circuit court for a writ of habeas corpus, contending that they had been denied effective assistance of counsel, and requesting that they be granted a delayed appeal. The circuit court then issued a "judgment" granting the writ as a "delayed appeal." Defendants also filed a petition for post-conviction relief seeking the same remedy. This was not acted upon by the circuit court because the Court of Appeals has held that such relief is not available to persons convicted of violating municipal ordinances. *Rutherford v. City of Klamath Falls,* 19 Or App 103, 526 P2d 645 (1974). It is clear, however, that habeas corpus is available in such cases. *See Stevenson v. Holzman,* 254 Or 94, 458 P2d 414 (1969).

In *Shipman v. Gladden,* 253 Or 192, 453 P2d 921 (1969), this court held, under facts similar to this case, that a defendant who had been denied an appeal because his attorney had failed to timely file a notice of appeal could obtain a "delayed appeal" by filing a petition for post-conviction relief pursuant to ORS 138.510 et seq.

Arguably, this case does not apply to the use of habeas corpus to secure a "delayed appeal." We note, however, that the reasoning employed by the court in *Shipman* would appear to be applicable to a habeas corpus proceeding under ORS 34.310 et seq. First, the court held that an attorney's failure to timely file a notice of appeal constituted incompetence as a matter of law and a denial of due process, thus rendering the conviction void unless an appeal were granted. Because the conviction would be void without an appeal, post-conviction relief was available pursuant to ORS 138.530. 253 Or 199-203. This same determination that the conviction would be void will also support a habeas corpus petition. *Smallman v. Gladden,* 206 Or 262, 269-70, 291 P2d 749 (1956).

Next, in holding that a delayed appeal was appropriate relief under the Post-Conviction Hearing Act by virtue of ORS 138.520, which permits the grant of "* * * such other relief as may be proper and just," this court said in *Shipman* (at 204) that this "conveys the same meaning as ORS 34.670, which directs a habeas corpus court 'to dispose of the party as the law and justice of the case may require.' "

In any event, respondent has not challenged this grant of a "delayed appeal" by habeas corpus, either before this court or the Court of Appeals, apparently in recognition that our previous decision in *Shipman,* unless overruled, would require such a result. We agree that *Shipman* is controlling in this case.

Respondent, the City of Klamath Falls, moved to dismiss the appeal, contending that ORS 221.350 and 221.360, as interpreted by this court in *City of Salem v. Polanski,* 202 Or 504, 276 P2d 407 (1954), restricts the right of persons convicted in municipal court to a *de novo* appeal in circuit court and only allows further appeal to the Court of Appeals in "cases involving the constitutionality of the charter provision or ordinance under which the conviction was obtained." (ORS 221.360). Defendants responded by contending that this restricted right of appeal in cases originating in municipal court denied them equal protection of the laws, and that they were also denied equal protection of the laws because the police had unlimited discretion to prosecute them in municipal court, rather than in district court.

The Court of Appeals held that ORS 221.360 was unconstitutional as a denial of equal protection of the laws insofar as it imposed such a restriction upon appeals from municipal courts because there exists no corresponding restriction on appeals from district courts and, further, that jurisdiction is granted to the Court of Appeals under ORS 138.040. 42 Or App 223, 228-29, 600 P2d 478 (1979). The Court of Appeals affirmed the circuit court convictions, however, holding that defendants were not entitled to a jury instruction to the effect that a person may use reasonable physical force in resisting allegedly excessive force used by an arresting officer and, further, that the circuit court had properly imposed a more severe sentence on defendant Thomas Winters. 42 Or App at 229-30.

Both parties petitioned this court for review of the decision of the Court of Appeals. Defendants' petition contends that:

1. "A person has the right to use reasonable force to resist the use of excessive force against him by a police officer, and such resistance constitutes a defense to charges of resisting arrest."

2. "ORS 161.209 permits defense of others and self defense as justification for behavior which otherwise would constitute disorderly conduct or resisting arrest."

Defendants' petition does not raise the issue regarding the circuit court's imposition of a more severe penalty against defendant Thomas Winters. Defendants did, however, raise this issue during oral argument.

The city's petition contends that:

1. "The Court of Appeals erred in assuming jurisdiction pursuant to ORS 138.040."
2. "The Court of Appeals erred in holding that ORS 221.360, to the extent it provides for a reduced scope of appellate court review, violates the equal protection clause of the Fourteenth Amendment and Article I, Section 20 of the Oregon Constitution."

Both petitions for review were allowed by this court.

Thus, we are requested by the parties to decide four questions:

1. Whether the Court of Appeals had jurisdiction to hear defendants' appeal in view of the limited grant of jurisdiction contained in ORS 221.350 and 221.360;

2. Whether the difference in appeal rights available to defendants prosecuted in municipal court, as compared with those available to defendants prosecuted in district court, or the discretion in the police to prosecute defendants in municipal court, rather than in district court, violated constitutional guarantees of equal protection of the laws;

3. Whether the use of reasonable force to resist the use of excessive force by a police officer in making an arrest could be raised by defendants as a defense to a charge of resisting arrest, and

4. Whether the circuit court could properly impose a more severe sentence following *de novo* review than had been imposed by the municipal court.

## I. *The Jurisdictional Question*

■        As held in *McGarger v. Moore,* 89 Or 597, 599, 175 P 77 (1918), after considering the provisions of § 6 of Article VII (Original) of the Constitution of Oregon and § 2 of Article VII (Amended) of that constitution:

> "This court, therefore, is one of limited jurisdiction aside from the instances just mentioned, [*mandamus, quo warranto* and *habeas corpus*]. It cannot acquire authority to act except in the manner provided by statute, in a case of the kind before us, and can exercise only the power expressly conferred upon it by statute."

To the same effect, *see City of Portland v. Duntley,* 185 Or 365, 371, 203 P2d 640 (1949), and *State ex rel Venn v. Reid,* 207 Or 617, 630-31, 298 P2d 990 (1956).[4]

**1.**        The question to be decided is whether any statute conferred jurisdiction upon the Court of Appeals to consider the appeal in this case.

As previously stated, defendants were convicted in municipal court of violating municipal ordinances. They then appealed to the circuit court per ORS 221.350.[5] This appeal to the circuit court was not

---

[4] § 6 of Article VII (Original) of the Constitution of Oregon provides:

"The Supreme Court shall have jurisdiction only to revise the final decisions of the Circuit Courts * * *."

§ 2 of Article VII (Amended) of that constitution provides:

"The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law. But the supreme court may, in its own discretion, take original jurisdiction in mandamus, quo warranto and habeas corpus proceedings."

[5] ORS 221.350 provides:

"Whenever any person is convicted in the municipal court of any city of any offense defined and made punishable by any city charter or ordinance, unless the charter of the city prohibits appeals from such court, such person shall have the same right of appeal to the circuit court within whose jurisdiction the city has its legal situs and maintains its seat of city government as now obtains from a conviction from courts of justice of the peace. The appeal shall be taken and perfected in the manner provided by law for taking appeals from justice courts."

an appeal in the usual sense,[6] but was a trial *de novo* as provided by ORS 221.390.[7]

Following their conviction in circuit court, defendants appealed to the Court of Appeals. That appeal was considered by that court on its merits in spite of the provisions of ORS 221.360, which provide:

"In all cases involving the constitutionality of the charter provision or ordinance under which the conviction was obtained as indicated in ORS 221.350, such person shall have the right of appeal to the circuit court in the manner provided in ORS 221.350, regardless of any charter provision or ordinance prohibiting appeals from the municipal court because of the amount of the penalty or otherwise. An appeal may likewise be taken in such cases from the judgment or final order of the circuit court to the Court of Appeals in the same manner as other appeals are taken from the circuit court to the Court of Appeals in other criminal cases. *Where the right of appeal in such cases depends upon there being involved an issue as to the constitutionality of the charter provision or ordinance, the decision of the appellate court shall be upon such constitutional issue only.*" (Emphasis added)

This court held in *City of Salem v. Polanski,* 202 Or 504, 276 P2d 407 (1954), that when, as in this case, defendants do not attack the validity of the underlying city charter provisions or ordinances, then, by reason of the provisions of ORS 221.360, no right of appeal exists beyond the circuit court. The court stated (at 509-10):

"By specifically providing for appeals to the Supreme Court in cases involving constitutional questions, but omitting to make similar provision for the appeal of other municipal court cases involving violations of city ordinances (except to the circuit court), the legislature clearly indicated its intention that appeals to the Supreme Court from the judgment of the circuit court in the latter type of cases should not be permitted."

---

[6] Criminal appeals are generally limited to reviewing questions of law appearing on the record. *See* ORS 138.220.

[7] For the provisions of ORS 221.390, see note 2, supra.

As will be subsequently discussed, the Court of Appeals held that ORS 221.360 violated equal protection guarantees

"* * * by limiting the appeal rights of persons convicted of municipal violations in cities where such violations are initially triable in municipal courts, while persons charged with municipal violations in certain other cities are tried in district courts pursuant to ORS Chapter 46 and, if convicted, have a right to plenary appeal to the Court of Appeals under ORS 46.047." 42 Or App at 227.

The Court of Appeals then held that because defendants had been convicted in circuit court upon a trial *de novo,* jurisdiction to hear the appeal was conferred by ORS 138.040, which states in part:

"The defendant may appeal to the Court of Appeals from a judgment on a conviction in a district or circuit court * * *."

In other words, the Court of Appeals appears to have reasoned that ORS 138.040 grants a general right of appeal and that ORS 221.360 restricts that right in cases originating in municipal court. Thus, upon holding ORS 221.360 to be invalid as unconstitutional, an appeal was permitted under ORS 138.040. We cannot agree with that interpretation of these statutes.

In *Portland v. White,* 106 Or 169, 173, 211 P 798 (1923), this court held that:

"The violation of a municipal ordinance is not necessarily a crime. It is we think, usually denominated in this state as a *quasi-criminal* offense. (Citations omitted)

"Therefore, it follows that Chapter XII, Title XVIII of the code (now ORS Chapter 138) relating to appeals in criminal actions is not applicable to offenses against the city law."[8]

---

[8] ORS 138.020 provides that:

"Either the state or the defendant may as a matter of right appeal from a judgment in a *criminal action* in cases prescribed in ORS 138.010 to 138.300, and not otherwise." (Emphasis added)

That opinion further held that because the statute limited appeals to judgments in criminal actions, it did not grant appellate jurisdiction in cases involving municipal ordinance violations.

Since 1923 the Oregon legislature has enacted a series of statutes granting appellate jurisdiction in cases involving violations of municipal ordinances. In 1927 the legislature enacted a statute granting a right of appeal from convictions in municipal courts to the circuit court and further to the Supreme Court "in the same manner as other appeals are taken from the circuit court to the Supreme Court in other criminal cases." 1927 Or L, c 114, § 1. In 1929 the legislature amended that statute, eliminating the right of any appeal to the Supreme Court. 1929 Or L, c 196, § 1. That statute became OCLA § 95-2802 and was amended in 1943 (1943 Or L, c 277), in 1947 (1947 Or L, c 462), and again in 1949 (1949 Or L, c 121). That statute, as amended so as to limit appeals to the Supreme Court to issues involving the constitutionality of city charter provisions or ordinances, was then codified in 1953 as ORS 221.350, 221.360, 221.370 and 221.380. For an extended discussion of these amendments, *see City of Salem v. Polanski, supra.*

In *State v. Kingsley,* 19 Or App 379, 527 P2d 744 (1974), the Court of Appeals, citing *Polanski,* held that a person charged and convicted of violating a municipal ordinance in a *district* court could not appeal to the Court of Appeals. The following year the legislature enacted ORS 46.047 (1975 Or L, c 611 § 15) granting a right of appeal to the Court of Appeals in such cases.[9] We also note that the 1979 legislature

---

The predecessor to this statute provided as follows:

"The party aggrieved, whether the state or the defendant, may appeal from a judgment in a *criminal action* in cases prescribed in this chapter and not otherwise." (Emphasis added) Or Laws (1920), § 1604; OC (1930), § 13-1202; OCLA § 26-1302.

[9] Since the decision of this court in *Polanski* in 1954, the legislature has also enacted other statutes relating to violations of municipal

considered a bill which would have repealed ORS 221.360 and amended ORS 221.350 to grant an unlimited right of appeal to the Court of Appeals in cases originating in municipal courts. That bill (SB 814) was defeated.

Defendants contend that in recent years this court has changed its position regarding the characterization of municipal ordinance violations and now regards those violations as "crimes," particularly when, as in this case, a penalty of imprisonment can be imposed. *See, e.g., Stevenson v. Holzman,* 245 Or 94, 458 P2d 414 (1969); *Grayson; Heer v. State,* 249 Or 92, 436 P2d 261 (1968), and *State v. Hayes,* 245 Or 179, 184, 421 P2d 385 (1966). Thus, according to defendants, it would then follow that because the municipal ordinance violations in this case are "crimes," they are included in the grant of jurisdiction to the Court of Appeals under ORS 138.020 and 138.040. Defendants then contend that ORS 221.350 and 221.360 should also be regarded as grants of appellate jurisdiction, rather than restrictions on that jurisdiction. Thus, according to defendants, the legislature has provided two overlapping grants of appellate jurisdiction and a defendant convicted of violating a municipal ordinance is free to take either a limited appeal under ORS 221.360 or an unlimited appeal under what defendants contend to be the grant provided by ORS 138.040.

We cannot agree with these contentions. The cited cases dealt with the question whether violations were criminal in nature in the constitutional sense of requiring certain due process protections. They did not purport to give meaning to statutory words beyond that intended by the legislature.

---

ordinances. Thus, ORS 46.040 now grants district courts concurrent jurisdiction with municipal courts of all cases involving municipal ordinance violations. (1963 Or L c 513, § 2; 1971 Or L c 743, § 311; 1973 Or L c 645, § 2). ORS 46.045 grants the Multnomah County District Court exclusive jurisdiction to hear cases involving violations of ordinances of the City of Portland (1971 Or L c 633, § 2).

In our opinion, it is clear that in cases involving violations of municipal ordinances the legislature has chosen to grant appellate jurisdiction under a statutory scheme that is separate and distinct from that provided by ORS 138.020 and ORS 138.040. For over fifty years the legislature has separately treated appeals in such cases based upon the assumption that these statutes did not apply to appeals from violations of municipal ordinances. For this court to now declare that these statutes provide a grant to the Court of Appeals of appellate jurisdiction over appeals by persons convicted of violating municipal ordinances so as to permit such persons to raise on such appeals issues other than the constitutionality of the charter provision or ordinance involved would be contrary to the obvious intention of the legislature, as evidenced by this long legislative history.

As previously stated, however, defendants contend that a denial of jurisdiction over their appeal in this case would result in a violation of their constitutional right to equal protection of the laws. If this be true, it is arguable that the remedy for such a constitutional violation would be to grant defendants a right to appeal in spite of the lack of any specific statutory grant of appellate jurisdiction. Also, if that contention by defendants compels the conclusion that the municipal ordinances under which defendants were prosecuted and convicted are themselves invalid for constitutional reasons, the Court of Appeals would have had jurisdiction under ORS 221.360 to consider that question. For these reasons, we shall proceed to consider these constitutional questions.

II. *The Constitutional Questions*

A. *The validity of ORS 221.360.*

■ It is well established that there is no constitutional right to an appeal. *Lindsey v. Normet,* 405 US 56, 77, 92 S Ct 862, 31 LEd 2d 36 (1972); *State v. Endsley,* 214 Or 537, 539, 331 P2d 338 (1958). As defendants contend, however, and as stated in *Lindsey v. Normet, supra* (at 77):

"When an appeal is afforded, however, it cannot be granted to some litigants and capriciously or arbitrarily denied to others without violating the Equal Protection Clause."

As previously stated, the Court of Appeals held that:

"* * * ORS 221.360, to the extent that it provides for a reduced scope of appellate court review for municipal offenders tried in cities where the initial trial is in the city's municipal court rather than a district court, violates the equal protection clause of the Fourteenth Amendment and Article I, Section 20 of the Oregon Constitution." 42 Or App at 228.

The Court of Appeals reached that conclusion by applying a "rational basis test" for legislative classifications. Finding no "rational basis for differentiating between similarly situated defendants' appeal rights," that court concluded that there had been a violation of equal protection of the laws.

■       The city, in its petition for review, contends that "equal protection" does not require identity of treatment and that when the appellate rights in cases originating in municipal court are compared with the appellate rights in cases originating in district court, no equal protection violation exists. We are also reminded by the United States Supreme Court's opinion in *San Antonio School District v. Rodriguez,* 411 US 1, 24, 93 S Ct 1278, 36 LEd 2d 16 (1973), that "* * * the Equal Protection Clause does not require absolute equality or precisely equal advantage." To the same effect, *see, e.g., Ross v. Moffitt,* 417 US 600, 612, 94 S Ct 2437, 41 LEd 2d 600 (1974), and *Douglas v. California,* 372 US 353, 367, 83 S Ct 814, 9 LEd 2d 811 (1963).[10]

---

[10] These opinions construe the Equal Protection Clause of the Fourteenth Amendment and do not address the guarantees of our state constitution found in Article I, Section 20, which states:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

As previously stated, in those cities where persons charged with violating municipal ordinances are tried in municipal court, they may take an appeal to the circuit court and obtain *de novo* review in the form of a new trial. ORS 221.350 and 221.390. In cities where such persons are tried in district court, they may appeal to the Court of Appeals. ORS 46.047.

To convicted defendants seeking appeal, there are advantages inherent in each of these systems. Persons convicted in municipal court have the advantage of a complete new trial, including the right to a new jury. Thus, they have the opportunity to seek review not only of legal questions, but they may also seek new factual determinations as well. They also have an advantage resulting from possible use of the trial in municipal court for the purpose of "discovery" and prior to trial *de novo* in the circuit court. Further appeal to the Court of Appeals, however, is limited to questions of the constitutionality of charter provisions or ordinances.

Persons convicted in district court have the advantage of appellate review before a multi-judge court.[11] That review, however, is limited to errors of law appearing on the record (ORS 138.220), and such

---

This court has consistently held that the scope of these two provisions is the same. As stated in *Plummer v. Donald M. Drake Co.,* 212 Or 430, 437, 320 P2d 245 (1958):

"The controlling principles which guide the courts in determining questions of alleged unconstitutional discrimination or class legislation are the same whether it is the equal protection clause of the Fourteenth Amendment of the Constitution of the United States which is invoked, or the privileges and immunities provision in Art. I, § 20 of the Oregon Constitution."

*See also Olson v. State ex rel Johnson,* 276 Or 9, 15-16, 554 P2d 139 (1976).

In this case, however, we need not reconsider that question.

[11] In *State v. Classen,* 285 Or 221, 244, 590 P2d 1198 (1979), Justice Lent, in his specially concurring opinion, quoted from Leflar, Internal Operating Procedures of Appellate Courts, p. 4.

" '* * * It is assumed correctly that a collegial body, removed from local pressures, sitting calmly in a quiet atmosphere with each judge thinking independently, is best able to catch mistakes and remedy them. The ideal of impartial justice can thus be approached.' "

persons do not have the advantages resulting from a review by trial *de novo* in the circuit court. It would be difficult to state categorically which system offers greater advantages to defendants. Whether one or the other system is to the advantage of a particular defendant depends on whether his defense rests only on factual contentions or also on legal contentions.

Thus, if we were to hold ORS 221.360 to be invalid upon the ground that a defendant convicted in municipal court and circuit court is denied equal protection because he does not have the same right to appeal to the Court of Appeals as granted to a defendant convicted in a district court, a person convicted in a district court could equally contend that he is denied equal protection in that he does not have the same right to review by a trial *de novo* in circuit court as granted to a defendant convicted in municipal court. Yet, both defendants whose cases originate in municipal court and defendants whose cases originate in district court enjoy advantages on appeal that are not available to the other.

For these reasons, it may well be that the differences between the procedures available to a defendant convicted in a municipal court, as compared with those available to a defendant convicted in a district court, do not rise to such a level of "inequality" as to constitute "unequal" protection of the laws. In any event, however, we are of the opinion that ORS 221.360 does not deny equal protection of the laws for other good and sufficient reasons.

The Court of Appeals, assuming that these differences were of such a nature and degree so as to constitute "unequal protection," proceeded to test the validity of ORS 221.360 by the use of more traditional equal protection analysis. Defendants contended, and the Court of Appeals held, that these differences were the result of a legislative classification of appellate jurisdiction which must satisfy a "rational basis" test in order to pass equal protection scrutiny. The Court of Appeals held that no "rational basis" existed to justify the classification.

As previously noted, there is no constitutional right to an appeal. *See State v. Endsley, supra,* and *Lindsey v. Normet, supra.* Therefore, we are not dealing in this case with a classification affecting fundamental rights. It is also clear that this case does not involve classifications that are inherently suspect (such as those based upon race, religion, national origin, etc.).

■ In the absence of fundamental rights or a suspect class, statutory schemes are examined to determine whether they rationally further legitimate objectives of state law. *San Antonio School District v. Rodriguez, supra,* at 17. Stated otherwise, a statutory scheme violates equal protection if it discriminates without any rational basis in terms of the purposes of the act, i.e., affords benefits to some while denying those benefits to others in a manner that is capricious or arbitrary. *Renaldi v. Yeager,* 384 US 305, 308, 86 S Ct 1497, 16 LEd 2d 577 (1976); *Bock v. Bend School Dist. No. 1,* 252 Or 53, 55, 448 P2d 521 (1968).

In our opinion the statutory scheme for appellate review as set forth in ORS 221.360 satisfies the "rational basis" test. By generally limiting review of municipal court convictions to local circuit courts, the legislature has reduced the burdens placed upon the cities and upon the Court of Appeals. Defendants contend that the only purpose served by this differential treatment is "to save the state and cities the cost of this group of appeals," and further, that the U.S. Supreme Court has "rejected costs as a distinguishing factor," citing *Lane v. Brown,* 372 US 477, 83 S Ct 768, 9 LEd 2d 892 (1963); *Burns v. Ohio,* 360 US 252, 79 S Ct 1164, 3 LEd 2d 1209(1959); *Griffin v. Illinois,* 351 US 12, 76 S Ct 585, 100 LEd 891 (1956), and *cf Lindsey v. Normet,* 405 US 56, 92 S Ct 862, 31 LEd 2d 36 (1972).

We note, however, that these cases dealt with statutes and rules that prevented indigents from obtaining appellate review in circumstances under which such review was available to persons with means, which is not true in this case. We further note

that more recent opinions of the U.S. Supreme Court have recognized that costs and cost-related factors are legitimate distinguishing factors and can support the rationality of legislative classifications. *See Ortwein v. Schwab*, 410 US 656, 93 S Ct 1172, 35 LEd 572 (1973), and *North v. Russell*, 427 US 328, 96 S Ct 2709, 49 LEd 2d 534 (1976).

■        We also find a rational basis for ORS 221.360 limiting the appeal rights of persons convicted of municipal violations in cities where such violations are initially triable in municipal courts, while persons charged with municipal violations in certain cities are tried initially in district courts and, pursuant to ORS 46.250, may appeal to the Court of Appeals. To allow those who are initially tried in municipal courts review by the Court of Appeals would be contrary to the previously noted purpose of balancing the costs and burdens of cities and the Court of Appeals. On the other hand, to allow those initially tried in district courts *de novo* appeals to circuit courts could well impose undue burdens upon counties in that it could well increase costs and add congestion to court dockets. Because those district court defendants should have some right to appeal, a rational solution is to allow review by the Court of Appeals. Thus, in our opinion, Oregon's statutory scheme for appeals is a rational attempt to evenly spread the costs and burdens of appeal throughout different levels of government.

In addition, we note that other jurisdictions have considered similar problems and determined that no equal protection problems were presented. In *Whittaker v. Superior Court of Shasta County*, 68 Cal 2d 357, 66 Cal Rptr 710, 438 P2d 358 (1968), the California Supreme Court examined the validity of a statutory scheme that established different appeal rights from the county courts of counties with relatively large populations as opposed to those with smaller populations. The fact that appeals in the larger counties were presented to a three-judge superior court panel while appeals in smaller counties were heard by a single superior court judge did not, in the opinion of

the court, create an equal protection violation. Other cases holding that different appeal rights pass equal protection scrutiny include *Appeal of O'Rourke,* 220 NW 2d 811 (Minn 1974)(appeal with leave of court only); *In re Maricopa County, Juvenile Action No. J-72804,* 18 Ariz App 560, 504 P2d 501 (1973) (different procedures provided in juvenile cases as opposed to appeals in adult cases); *Saunders v. Reynolds,* 204 SE 2d 421 (Va 1974)(different appeal rights for misdemeanors tried in courts not of record and felonies tried in courts of record).

For these reasons, we hold that the Court of Appeals erred in its holding that ORS 221.360 is invalid as a denial of equal protection of the laws.

Defendants contend not only that they were denied equal protection of the laws, contrary to the Fourteenth Amendment of the Constitution of the United States, but also that they were discriminated against in a manner contrary to Article I, Section 20 of the Constitution of Oregon, which provides:

> "No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

Thus, defendants contend that other defendants, whose cases are prosecuted in state district courts, are granted an unlimited "privilege" of appeal to the Court of Appeals, a "privilege" denied to them "upon the same terms." We believe, however, that substantially the same analysis applies.

It is true that the provisions of Article I, Section 20 of the Oregon Constitution are not identical with those of the Fourteenth Amendment of the Constitution of the United States. Thus, as we said recently in *State ex rel Reed v. Schwab,* 287 Or 411, 417, 600 P2d 387 (1979) quoting from an earlier opinion by this court:

> "The provisions of the state Constitution are the antithesis of the fourteenth amendment in that they prevent the enlargement of the rights of some in discrimination against the rights of others, while the

fourteenth amendment prevents the curtailment of rights * * *."

For examples of cases in which the applicability of the two provisions might not be identical, see Linde, Without Due Process, 49 Or L Rev 125, 142-43 (1970). *See also Tharalson v. State Dept. of Rev.,* 281 Or 9, 15, 573 P2d 298 (1978).

Nevertheless, in the usual case substantially the same analysis is applicable in determining whether there has been a denial of equal protection of the laws or a grant of a privilege or immunity on terms not equally applicable to all citizens. Thus, as held by this court in *School Dist. No. 12 v. Wasco County,* 270 Or 622, 628, 529 P2d 386 (1975):

> "* * * this court has stated that such semantic and conceptual differences which may exist between the Fourteenth Amendment and Article I, Section 20, can be resolved in favor of common underlying principles. In *Plummer v. Donald M. Drake Co.,* 212 Or 430, 437, 320 P2d 245 (1958), the court said:
>
> > " 'The controlling principles which guide the courts in determining questions of alleged unconstitutional discrimination or class legislation are the same whether it is the equal protection clause of the Fourteenth Amendment of the Constitution of the United States which is invoked, or the privileges and immunities provision in Art. I, § 20 of the Oregon Constitution. Fundamentally, classification is a matter committed to the discretion of the legislature and the courts will not interfere with the legislative judgment unless it is palpably arbitrary * * *.' "

To the same effect, *see, e.g., Phillips v. City,* 192 Or 143, 153, 234 P2d 572 (1951); and *Savage v. Martin,* 161 Or 660, 693, 91 P2d 273 (1939). *See also Jarvill v. City of Eugene,* 289 Or 157, 184, 613 P2d 1 (1980). Indeed, in *State v. Pirkey,* 203 Or 697, 281 P2d 698 (1955), relied upon by defendants in challenging the constitutionality of the Klamath Falls ordinance in this case, this court, in considering the problem presented in that case, which has considerable similarity to the problem presented in this case, for reasons stated below, said (at 703) that:

"The Equal Protection Clause of the Fourteenth Amendment, and Article I, Section 20 of the Oregon Constitution are alike in that they constitute similar limitations upon legislative action for the protection of the individual from arbitrary or capricious legislation. *Phillips v. City of Bend,* 192 Or 143, 153, 234 P2d 572; *Savage v. Martin,* 161 Or 660, 91 P2d 273. Affirmatively stated, both provisions constitute a pledge of the protection of equal laws. *Power Manufacturing Co. v. Saunders,* 274 US 490, 71 L Ed 1165. The Constitution does not require that a law shall affect all persons exactly alike, but there is a guaranty of like treatment to all persons similarly situated. It is not the purpose of either constitutional provision to take from the states the right and power to classify the subjects of legislation. It is only when such attempted classification is arbitrary and unreasonable that the courts can declare it to be beyond the legislative authority."

■■     Upon application of such an analysis to the question whether ORS 221.360 grants the "privilege" of an unlimited appeal to the Court of Appeals to defendants prosecuted in district courts for violation of state laws which does not "upon the same terms * * * belong" to these defendants, we are unable to escape the conclusion that these defendants are not denied such a "privilege" as individual persons, but only because they are members of a "class" of persons who are prosecuted in municipal courts for violation of municipal ordinances, as distinct from persons prosecuted in state district courts for violation of state statutes.

For reasons previously stated, we have held that such a classification is not unreasonable for purposes of the Equal Protection clause of the Fourteenth Amendment of the Constitution of the United States. For the same reasons, we hold that such a classification or discrimination is not "palpably arbitrary" for purposes of the privileges and immunities clause of Article I, Section 20 of the Constitution of Oregon. Again, *see School Dist. No. 12 v. Wasco County, supra,* at 628. As stated in *Mallatt v. Luihn et al,* 206 Or 678, 702, 294 P2d 871 (1956):

"It is well established that the courts will not undertake to disturb a legislative classification unless the legislature could not have had any reasonable grounds for believing that there were valid public considerations for the distinction made."

B. *The validity of the Klamath Falls ordinances.*

Defendants also contend that they were denied equal protection of the laws for another reason. Citing *State v. Pirkey,* 203 Or 697, 281 P2d 698 (1955), and *State v. Cory,* 204 Or 235, 282 P2d 1054 (1955), defendants contend that the ordinances they were convicted of violating were identical to state criminal statutes covering the same offenses[12]

---

[12] *Resisting Arrest*

Klamath Falls Municipal Code Ch. 31 § 15.1 provides:

"A person commits the crime of resisting arrest if he intentionally resists a person known by him to be a peace officer in making an arrest. 'Resists,' as used in this section, means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person. It is no defense to a prosecution under this section that the peace officer lacked legal authority to make the arrest provided, he was acting under color of his official authority."

ORS 162.315 provides:

"(1) A person commits the crime of resisting arrest if he intentionally resists a person known by him to be a peace officer in making an arrest.

"(2) 'Resists,' as used in this section, means the use or threatened use of violence, physical force or any other means that creates a substantial risk of physical injury to any person.

"(3) It is no defense to a prosecution under this section that the peace officer lacked legal authority to make the arrest, provided he was acting under color of his official authority.

"(4) Resisting arrest is a Class A misdemeanor."

*Disorderly Conduct*

Klamath Falls Municipal Code Ch. 31 § 6 provides:

"A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (a) Engages in fighting or in violent tumultuous or threatened behavior; or (b) makes unreasonable noise; or (c) uses abusive or obscene language, or makes an obscene gesture, in a public place; or (d) disturbs any lawful assembly of persons without lawful authority; or (e) obstructs vehicular or pedestrian traffic on a public

and that the arresting officer "had the option to charge them under either the municipal ordinances or the state statutes." Because a charge under the state statute would have been tried in district court with a right of appeal to the Court of Appeals, defendants contend that "this discretion to accord some individuals a broader right of appeal than others charged with identical offenses violates Article I, Section 20."

The record before us and the original briefs presented by the parties in this case do not disclose whether under the ordinances or charter of the City of Klamath Falls the arresting officer, city attorney or any other city official was granted or permitted unlimited discretion to charge defendants with violating either the municipal code or the state

_____

way; or (f) congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or (g) initiates or circulates a report, knowing it to be false, concerning an alleged or impending fire, explosion, crime, catastrophe or other emergency; or (h) creates a hazardous or physically offensive condition by an act which he is not licensed or privileged to do."

ORS 166.025 provides:

"(1) A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:

"(a) Engages in fighting or in violent, tumultuous or threatening behavior; or

"(b) Makes unreasonable noise; or

"(c) Uses abusive or obscene language, or makes an obscene gesture, in a public place; or

"(d) Disturbs any lawful assembly of persons without lawful authority; or

"(e) Obstructs vehicular or pedestrian traffic on a public way; or

"(f) Congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse; or

"(g) Initiates or circulates a report, knowing it to be false, concerning an alleged or impending fire, explosion, crime, catastrophe or other emergency; or

"(h) Creates a hazardous or physically offensive condition by any act which he is not licensed or privileged to do.

"(2) Disorderly conduct is a Class B misdemeanor."

criminal statutes. In response to a request by this court for supplemental briefs, however, it is conceded by the city that there is no provision of any ordinance or of the city charter which limits or controls the exercise of such a discretion, although contending that it is the "unwritten policy" of the city and its police department that "an offense against a city ordinance is to be charged into Municipal Court as a municipal offense, unless there exists a companion charge over which the Municipal Court does not have jurisdiction," in which event "both charges would be brought under statutes in state court."

In *State v. Pirkey, supra,* this court reviewed the constitutionality of a statute that provided that the crime of drawing a bank check without sufficient funds in the bank with which to pay the check in full could, in the discretion of the grand jury or magistrate to whom complaint was made, be prosecuted as either a felony or a misdemeanor. In *State v. Cory, supra,* this court reviewed the constitutionality of a statute that granted to district attorneys, in cases involving non-violent crimes, unlimited discretion to file or not file an information seeking a sentence under Oregon's Habitual Criminal Act. In both cases this court held that the statutes violated equal protection because they constituted an unauthorized delegation of discretionary power.

In cases since *Pirkey* and *Cory* we have made it clear that the rule of *Pirkey* is limited to cases in which there is no basis for distinction between the two offenses as described in the two statutes involved in such cases. *See State v. Reynolds,* 289 Or 533, 538, 614 P2d 1158 (1980). It is also important to note that in *Pirkey* the same conduct that constituted an offense under either statute might be punished more leniently or more severely dependent upon the complete discretion of a prosecutor in initiating a prosecution under one statute, rather than under the other. It was the unbridled power conferred upon the prosecutor to determine what maximum punishment the judge could later impose that was held to be the fatal flaw of the statute in *Pirkey.*

It is also important to note that in both *Pirkey* and *Cory* the exercise of discretion presented the potential for significant prejudice to the defendants involved, i.e., greater or lesser punishment, and in both cases the discretion in question was exercised to the detriment of the defendants. In this case, however, both of the municipal ordinances under which defendants were charged carried a maximum penalty of a $505 fine and 60 days imprisonment, whereas the state statutes defendants claim they could have been charged with violating carry maximum penalties of imprisonment for one year and a $1,000 fine in one instance and imprisonment for 6 months and a $500 fine in the other.[13] Thus, defendants may have been ultimately benefited by the decision to prosecute them under the municipal ordinances because the ordinance violations carried lighter penalties than violations of the corresponding state statutes.

Defendants contend that the rule of *Pirkey* is nevertheless applicable and controlling in this case because not only are the offenses described in the ordinances identical with those described in the statute, but defendants prosecuted under the ordinances suffer substantial prejudice in that although they have a right to a trial de novo in circuit court they have no right of appeal to the Court of Appeals for any error committed in the prosecution or trial of this case, as does a person charged with the same offense in violation of the state statute, but that defendants are limited in any such appeal to a challenge of the constitutionality of the ordinance.

---

[13] Klamath Falls Municipal Code Ch. 1 § 7:

"Whenever in this Code or any other ordinance of the city any act is prohibited or is made or declared to be unlawful or an offense, or the doing of any act is required or the failure to do any act is declared to be unlawful or an offense, or no specific penalty is provided therefor, the violation of any such provisions of this Code or any other ordinance of this city shall be punished by a fine not exceeding Five Hundred and Five Dollars or imprisonment for a term not exceeding sixty days or by both such fine and imprisonment * * *."

Resisting arrest is a Class A misdemeanor, ORS 162.315(4), and disorderly conduct is a Class B misdemeanor, ORS 166.025. The penalties for these crimes are contained in ORS 161.615 and 161.635.

Regardless of whether any such prejudice is sufficiently comparable to the prejudice suffered by the defendant in *Pirkey,* we are of the opinion that such a contention must be rejected for another reason. In *United States v. Batchelder,* 442 US 114 (1979), the defendant was convicted under 18 USC § 922(h) of being a felon who received a firearm that had traveled in interstate commerce and was sentenced to the maximum term, five years' imprisonment. The Court of Appeals, noting that the substantive elements of § 922(h) and 18 USC App § 1202(a) [18 USCS Appx § 1202(a)] are identical as applied to a convicted felon who unlawfully receives a firearm, held that no more than the two-year maximum sentence provided by § 1202(a) could be imposed upon the defendant, thus applying a rule similar to that applied by this court in *Pirkey.* 442 US at 116-117. The Supreme Court of the United States reversed and held, in a unanimous opinion, that:

"This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." 442 US at 123-24.

Of more direct significance for purposes of this case, the Court also stated:

"* * * More importantly, there is no appreciable difference between the discretion a prosecutor exercises when deciding whether to charge under one of two statutes with different elements and the discretion he exercises when choosing one of two statutes with identical elements. In the former situation, once he determines that the proof will support conviction under either statute, his decision is indistinguishable from the one he faces in the latter context. The prosecutor may be influenced by the penalties available upon conviction, but this fact, standing alone, does not give rise to a violation of the Eual Protection or Due Process Clause. * * *." 422 US at 125.

In our opinion, the decision by the Supreme Court of the United States in *Batchelder* is directly contrary to the rule as adopted by this court in *Pirkey.* It follows, in our opinion, that the Equal Protection

clause of the Fourteenth Amendment of the Constitution of the United States can no longer be properly held by this court to be violated in cases in which a prosecutor, grand jury or magistrate has complete discretion to decide whether to charge under one of two statutes (or under a municipal ordinance or a statute) with identical elements even though, depending upon such a choice, the maximum penalty which may be imposed upon conviction is greater under one statute (or ordinance) than under the other.

For similar reasons, it also follows, in our opinion, that by reason of the decision in *Batchelder,* it cannot be properly held by this court that the Equal Protection clause of the Fourteenth Amendment is violated in a case such as this in which the potential prejudice to the defendant is not the possibility of a heavier penalty, but a difference in his right of appeal.

As previously stated, there are both advantages and disadvantages to defendants prosecuted under municipal ordinances in municipal courts, as compared to defendants prosecuted under state statutes in district courts, and it would be difficult to state categorically which offers greater advantages to such defendants. In addition, as previously noted, there is no constitutional right of appeal. Thus, no fundamental right is involved so as to require a broad application of the Fourteenth Amendment, and no discrimination on grounds that are inherently suspect, such as race, religion, etc., is charged. See Tribe, *Constitutional Law,* §§ 16-6, 16-7. Accordingly, we do not believe that any prejudice to a defendant prosecuted under a municipal ordinance in a municipal court can properly be said to be sufficiently greater or different than the prejudice to the defendant in *Pirkey* so as to properly hold that the Equal Protection clause of the Fourteenth Amendment is violated in this case, but not in a case such as presented in *Pirkey.*

■ Defendants also contend that the "privileges and immunities" provision of Article I, Section 20, of the Oregon Constitution is violated in this case. Even assuming, however, that Article I, Section 20, is to be

interpreted as conferring rights substantially differ-
ent or greater than those conferred by the Equal
Protection clause of the Fourteenth Amendment,
neither the ordinance under which these defendants
were prosecuted nor the statute describing the same
offense were "laws" which "granted" to any "citizen or
class of citizens" any "privileges or immunities"
which, upon the same terms, do not "equally belong to
all citizens." Defendants do not contend that either
that ordinance or that statute is unconstitutional. If
any such privileges were "granted" by any "law," they
were conferred by ORS 221.360, which provides for
differences in the rights of appeal by defendants prose-
cuted in municipal courts and in state district courts.
For reasons previously stated, that statute does not
violate Article I, Section 20.

### III. *The Remaining Questions*

As previously stated, defendants also contend
that this court should reverse the holding by the Court
of Appeals that the circuit court did not err in failing
to give an instruction requested by the defendants that
they had a right to resist the use of excessive force by
police officers and in holding that the circuit court did
not err in imposing a more severe jail sentence and
fine upon defendant Thomas Winters than that im-
posed by the municipal court.

As also previously noted, however, by reason
of ORS 221.360 the Court of Appeals had no jurisdic-
tion to consider those questions. That court did so,
however, and these defendants thus have had the
benefit of an appeal to the Court of Appeals on those
questions. Under these circumstances we decline to
review the decision by the Court of Appeals upon those
questions.[14]

---

[14] We recognize that it has been some time since this case was argued in
this court. The parties should know, however, that the many and complex
questions presented by this case have been the subject of discussion by the
court in numerous conferences extending over a period of several months.

For all of these reasons, the convictions of these defendants are affirmed.

Affirmed.

**LENT, J.,** dissenting.

I dissent from the result reached by the majority. The municipal ordinance and the state statute both describe prohibited conduct in substantially identical terms. The police officer has unfettered discretion in deciding whether to charge one with violating the ordinance or the statute. The decision of the police officer fixes the appellate rights of the person charged, and that decision may well adversely affect the ultimate rights of the person charged. To me this constitutes a violation of the defendants' rights under both the Fourteenth Amendment (Equal Protection Clause) to the United States Constitution and Article I, section 20, of the Oregon Constitution. I would, therefore, reverse the convictions for violation of the ordinance.

Defendants have so contended, relying upon our decisions in *State v. Pirkey,* 203 Or 697, 281 P2d 698 (1955) and *State v., Cory,* 204 Or 235, 282 P2d 1054 (1955).

In *Pirkey* this court held a statute to violate both constitutional provisions because that statute granted to a grand jury or a magistrate the "unguided and untrammeled" discretion to decide whether to prosecute a defendant for a felony or a misdemeanor for given proscribed conduct. In *Cory* this court reviewed the constitutionality of a statute that granted to district attorneys, in cases involving non-violent crimes, "unbridled" discretion to file or not to file an information seeking a sentence under Oregon's Habitual Criminal Act. This court held that both the state and federal constitutions' equal protection provisions[1] were violated by the statute and, therefore,

---

[1] Oregon has no "equal protection" provision in so many words. Article I, section 20, of the Oregon Constitution provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

That is the section to which reference is made by this court, however, when speaking of the state constitution's guarantee of equal protection.

struck down the statute. The basis of finding the statute to be unconstitutional was held to be the grant to the district attorney of the right to act according to his "whim and caprice."

In the case at bar the same kind of "unguided," "untrammeled" and "unbridled" discretion is granted to a police officer to decide the course of prosecution according to his "whim or caprice." The majority rejects deciding this case under the rule of *Pirkey* and *Cory,* however, upon the ground that *United States v. Batchelder,* 442 US 114, 99 S Ct 2198, 60 L Ed2d 755 (1979) has overruled those cases. In that case the prosecutor had discretion as to *which felony* would be charged. One carried a possibly greater period of incarceration, and the other carried a possibly greater fine. The United States Supreme Court found no denial of constitutional right of the defendant was worked by allowing the prosecutor to choose under which section of the criminal law to proceed. One must wonder, of course, whether the result would be the same had the prosecutor been granted unlimited discretion whether to charge for a felony or a misdemeanor. That was the situation presented in *Pirkey* but not presented in *Batchelder.*

There is another distinction with respect to *Batchelder.* The court there said, "[A] decision to proceed under § 922(h) does not empower the Government to predetermine ultimate criminal sanctions." 422 US 125. As the court noted, the sentence to be imposed was still preserved for the judge. In the case at bar, the charging police officer has the capacity to predetermine finally and completely defendants' appeal rights.

If I assume, however, that as a matter of federal constitutional law the defendants here are not entitled to prevail, that does not answer the question

of whether Article I, section 20, of the Oregon Constitution prevents their conviction. I do not perceive how a United States Supreme Court decision as to the effect of the federal constitution upon prosecutorial discretion with respect to federal statutes can overrule the decisions of this court as to the protection accorded by the Oregon Constitution. Especially I find that idea difficult to accept given the fact that Oregon has no constitutional provision using the term "equal protection." Assuming, however, for the sake of argument, that the two constitutions mean exactly the same thing, I find nothing in the majority opinion that convinces me the reasoning of *Pirkey* and *Cory* is fallacious. I would interpret Or Const. Art I, § 20, as this court did in those cases and reverse the convictions.[2]

---

[2] I shall not pursue in this opinion why I believe there are significant differences which flow from the differences in constitutional text. I would point out that an analysis based upon "classes" affected will not always apply when testing constitutionality under the state constitution because of the deliberate distinction made between any "citizen" and any "class of citizens."