Submitted on record and briefs April 26,
affirmed November 10, 1982

STATE OF OREGON,
*Respondent,*

*v.*

KAY BOWMAN,
*Appellant.*

(No. 81-106-M, CA A22425)

653 P2d 254

Loren L. Heuertz, Gold Hill, filed the brief for appellant.

Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Jan Peter Londahl, Assistant Attorney General, Salem, filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant was convicted of the offense of failure to send her child to school. ORS 339.020; 339.990.[1] On appeal she challenges the constitutionality of the compulsory school attendance statutes, the manner in which the statutes were enforced against her and the sufficiency of the evidence introduced at trial. We affirm.

In 1978, while living in the Roseburg school district, defendant became dissatisfied with the education her two children were receiving in the public school system. With the permission of the school district superintendent, defendant removed her children from public school and taught them herself, privately, at home beginning in the fall of 1978. After Fall, 1979, defendant sent her children back into the public school system, where they were given complete credit for their home study and were placed at their regular grade level. In the spring of 1980, defendant withdrew her younger child, then in the 8th grade, from public school, again with the consent of the superintendent and resumed teaching the younger child at home. She maintained contact with the Roseburg school district, and the child underwent achievement tests to the school district's satisfaction.

In October, 1980, defendant and her children moved to Josephine County. She immediately called the school district superintendent, who instructed her to make a written request to continue teaching the younger child privately at home. She did so, and from subsequent telephone conversations she believed that she had an informal agreement to continue home teaching. In November the superintendent wrote her a letter, which stated in part:

> "Permission to teach your son at home may be granted under the following conditions: Present [the child] to North Valley High School for registration (enrollment) for the record, and arrangement for testing to determine

[1] ORS 339.020 provides:

"Except as provided in ORS 339.030, every person having control of any child between the ages of 7 and 18 years who has not completed the 12th grade is required to send such child to and maintain such child in regular attendance at a public full-time school during the entire school term."

placement in a course of study appropriate to his achievement level and needs. A program can then be provided for your use in home teaching and upon which he may be 'examined in the work covered' as required by statute."

The letter also warned that the high school could not grant a diploma, that the child would have to seek a Certificate of Equivalency from the state, that permission for home teaching was valid for only that school year, that the child would have to be tested twice during the year and that, if the child was not being properly taught, defendant would be ordered to return him to school.

Defendant objected to the requirement that the child be enrolled, but she nonetheless complied. Upon enrolling, the child was then tested at the school, apparently for placement purposes as stated in the superintendent's letter. Defendant testified that she had conferred with school officials during this same time and was informed that the school would not grant the child credits for home study and, should he return to school, would place him at the beginning of the 9th grade. Defendant objected to this requirement because her home teaching program in Roseburg did not have similar restrictions and because the restrictions gave no benefit to her child in the event that he could not complete his home study program.

Defendant was informed that she was to present the child at the school for testing on January 15, 1981. On January 7, defendant responded with a lengthy letter in which, among other things, she stated her refusal to present the child for testing.[2] On January 19, the superintendent wrote a letter to her revoking his permission for home teaching and ordering her to enroll and register the child for full-time instruction at the school. The letter concluded:

"* * * Failure to comply with this order will place you in violation of the compulsory school attendance law and subject you to prosecution for such violation of law."

Defendant did not enroll or register the child as required, and this criminal prosecution resulted.

---

[2] The basic theme of her letter was that the compulsory school attendance statutes are unconstitutional; hence, she need not comply with the home study provisions.

Oregon law requires children between the ages of 7 and 18 who have not completed the 12th grade "to attend regularly a public full-time school," ORS 339.010, but provides exemptions from compulsory public school attendance. ORS 339.030 provides, in part:

"In the following cases, children shall not be required to attend public full-time schools:

"* * * * *

"(2) Children being taught in a private or parochial school in the courses of study usually taught in grades 1 through 12 in the public schools and in attendance for a period equivalent to that required of children attending public schools.

"* * * * *

"(6) Children being taught for a period equivalent to that required of children attending public schools by a parent or private teacher the courses of study usually taught in grades 1 through 12 in the public school.

"(a) Before the children are taught by a parent or private teacher, the parent or teacher must receive written permission from the executive officer of the resident school district. The permission shall not extend beyond the end of the school year in which permission is granted. If permission is not granted, the person having legal custody of the children may appeal the decision to the school board of the resident district.

"(b) Children being taught by a parent or private teacher must be examined in the work covered. Such examinations shall be prepared by the State Board of Education and provided to school districts upon request. If the executive officer of the administrative office determines after examination that the children are not being taught properly, he shall order the person having control of the children to send them to school for the remainder of the school year.

"* * * * *"

■ ■  Defendant first contends that the "private or parochial school" exemption, ORS 339.030(2), and the "parent or private teacher" exemption, ORS 339.030(6), are unconstitutionally vague. She argues that they impose differing obligations but fail to inform a person such as herself as to which of the two exemptions applies in a given case.

The two exemptions are not models of legislative clarity, but that does not compel the conclusion that they are unconstitutionally vague.

"* * * [I]f the statute, as applied to most conceivable fact situations, would not fairly inform persons of common intelligence or courts and juries what is prohibited, it is void. On the other hand, if there are situations to which the statute could be constitutionally applied, it will not be voided simply because under some other fact situations the statute cannot be constitutionally applied. *United States v. Raines,* 362 US 17, 80 S Ct 519, 4 L Ed 2d 524 (1960)." *State v. Mellinger,* 52 Or App 21, 30, 627 P2d 897 (1981).

Defendant at all times proceeded on the basis that her child's situation fell into the "parent or private teacher" exemption, and she conducted herself in accordance with the requirements of that exemption until she and the school district had their disagreement in January, 1981. That exemption contemplates the precise situation of this case: the parent who chooses to teach her child at home rather than send the child to public or private school.

The "private school" exemption, on the other hand, contemplates an institution of some kind whose purpose is to educate children. This view is supported by the statutes providing for the voluntary registration of private schools. ORS 345.505 to 345.585. ORS 345.505(2) provides:

" 'Private school' means a private elementary or secondary school operated by a person or by a private agency *except as provided in ORS 339.030(6)(a) and (b),* offering education in prekindergarten, kindergarten, or grades 1 through 12 or any part thereof." (Emphasis added.)

This statute does not give much help in defining the minimum requisites of a private school, but it clearly states that the "parent or private teacher" exemption is *not* a private school.[3] The statute is not vague. *State v. Drummond,* 6 Or App 558, 562, 489 P2d 958 (1971).

---

[3] In support of her vagueness argument, defendant relies on *The People v. Levisen,* 404 Ill 574, 90 NE2d 213 (1950), which held that teaching by a parent at home under circumstances similar to those of the present case must be considered to be a "private school" for purposes of the compulsory school attendance statute. Defendant overlooks the fact that the Illinois statutes at issue in *Levisen* do not provide for teaching by a parent at home, unlike the Oregon statutes. Moreover, the court in *Levisen* expressly placed on parents who teach their children at home

■ Defendant next contends that the two exemptions are classifications that violate the federal Equal Protection Clause and Article I, Section 20 of the Oregon Constitution.[4] She argues that there is no rational basis on which to distinguish children taught by a parent or private teacher, who are subject to the permission and oversight of the local public school district pursuant to ORS 339.030(6)(a) and (b), from children taught in a private school, who are not subject to similar state permission and oversight.

The compulsory school attendance exemptions reflect the legislature's purpose to ensure the quality of education received by all children in this state. The legislature apparently believed that private schools, as institutions established for educational purposes, will satisfy the legislative purpose with minimal state oversight, while teaching by a parent or a private teacher may be abused by some parents in avoidance of both the legislative purpose and their responsibility to educate their children.

We agree with defendant that the two classifications—children taught in a private school and children taught by a parent or private teacher—are treated differently, but this difference in treatment is not an improper legislative classification. As the Oregon Supreme Court stated:

" 'It is well established that the courts will not undertake to disturb a legislative classification unless the legislature could not have had any reasonable grounds for

"the burden of showing that they have in good faith provided an adequate course of instruction in the prescribed branches of learning." 404 Ill at 578. This showing is the functional equivalent of the Oregon statute's requirement that home-taught children be examined to the local school district's satisfaction.

[4] The Fourteenth Amendment provides, in part:

"* * * No State shall * * * deny to any person within its jurisdiction the equal protection of the laws."

Or Const, Art I, § 20 provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens.—"

The state and federal provisions invoke substantially the same analysis. *City of Klamath Falls v. Winters*, 289 Or 757, 774-76, 619 P2d 217 (1980), *dismissed* 451 US 964 (1981).

believing that there were valid public considerations for the distinction made.'" *City of Klamath Falls v. Winters,* 289 Or 757, 777, 619 P2d 217 (1980), *dismissed* 451 US 964 (1981) (quoting *Mallatt v. Luihn et al,* 206 Or 678, 702, 294 P2d 871 (1956)).

■    Defendant next argues that the "parent or private teacher" exemption improperly delegates legislative authority to the local school superintendent without "adequate safeguards to those affected thereby." The statutory requirement that the child be tested, ORS 339.030(6)(b), is that the superintendent determine whether the child is "being taught properly" on the basis of tests prepared by the state Board of Education. Pursuant to this statute, the Board has by rule adopted the "standardized achievement test currently used to examine other children of similar age or grade in that district" as the appropriate examination for children taught by a parent or private teacher. OAR 581-21-025. Defendant argues that this makes the test the *sole* criterion by which to judge the child's progress, contrary to OAR 581-21-030, which provides, in part:

"(1)   Tests shall be considered as instruments that are means to assist decision-making on the part of parents, the public, school boards and the professional staff, rather than ends unto themselves. * * *

"* * * * *

"(2)   Tests of intelligence, ability, achievement or aptitude shall not be used as sole criterion for placement of students in educational groups or tracks:

"* * * * *."

We find no improper delegation in the statutory requirements that the state Board of Education prepare examinations for children taught by a parent or private teacher and that the local superintendent determine whether such a child is being properly taught. The statute and rules simply require the child taught by a parent or private teacher be tested on the same standard as "children of similar age or grade in the district" and not be held to a different standard solely because not being taught in the public schools.

■ ■    Defendant next contends that the superintendent and the school district acted beyond the scope of their

statutory authority in requiring that the child be enrolled at North Valley High School, in stating that the school would grant the child no credit for work done at home, in revoking permission after defendant's refusal to allow the child to be tested and in not informing defendant that she had the statutory right to appeal the superintendent's decision to the local school board. She makes other arguments, but those have to do with the distinction between the "private school" and "parent or private teacher" exemptions and have already been discussed.

ORS 339.030(6)(a) provides that the decision of the executive officer of the school district to deny permission to teach the child privately at home may be appealed to the school board. Whether the superintendent's decision was correct was a matter that should have been raised before the school board. The correctness of the superintendent's decision is not an issue under the charge in this case. Defendant contends that neither the school board nor the superintendent informed her of her right to appeal the decision and that she should not be prosecuted for refusing to send her child to school. There is no statutory requirement that the school district or its officials inform defendant of her appeal rights.

■ Defendant's last contention is that the state failed to prove beyond a reasonable doubt that she had acted with criminal negligence as alleged in the misdemeanor complaint. From the foregoing it is clear that defendant knowingly or intentionally failed to send her child to school after the superintendent's order to do so, in violation of the compulsory school attendance statutes. Establishment of a knowing or intentional violation satisfies the lesser culpable mental state of criminal negligence. ORS 161.115(3).

Affirmed.