Argued July 9, 1968, affirmed April 30, 1969

SHIPMAN, *Respondent, v.* GLADDEN,
*Appellant.*

453 P2d 921

*Helen B. Kalil,* Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief was Robert Y. Thornton, Attorney General.

*Howard R. Lonergan,* Portland, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and RODMAN,* Justices.

McALLISTER, J.

This is a post-conviction proceeding in which the state appeals from an order of the trial court granting petitioner a delayed appeal. The questions raised are (1) whether the failure of petitioner's retained counsel to timely file a notice of appeal deprived petitioner of his right to due process of law guaranteed by the Fourteenth Amendment to the United States Constitution, and (2) whether the Post-Conviction Hearing

---

\* Rodman, J., did not participate in the decision of this case.

Act authorizes the granting of a delayed appeal in order to rectify the violation of that constitutional right.

Petitioner was convicted by a jury of receiving and concealing stolen property and sentenced to the penitentiary for three years. He was represented at the trial by a retained attorney who recommended an appeal and agreed to appeal the case. The attorney timely prepared and served a notice of appeal, but neglected to file it, thus admittedly depriving petitioner of his right to appeal.

In the landmark case of *Powell v. Alabama,* 287 US 45, 53 S Ct 55, 77 L ed 158 (1932), the principle was established that denial to an accused in a capital case of the right to counsel infringes the due process clause of the Fourteenth Amendment. In framing the issue involved in that case the court said:

> "* * * The sole inquiry which we are permitted to make is whether the federal Constitution was contravened (citations omitted); and as to that, we confine ourselves, as already suggested to the inquiry whether the defendants were in substance denied the right of counsel, and if so, whether such denial infringes the due process clause of the Fourteenth Amendment." 77 L ed at 162.

And again the court restated the question as follows:

> "* * * The question, however, which it is our duty, and within our power, to decide, is whether the denial of the assistance of counsel contravenes the due process clause of the Fourteenth Amendment to the federal Constitution." 77 L ed at 166.

The court phrased its resolution of the question only in due process terms. It said:

> "In the light of the facts outlined in the fore-

part of this opinion—the ignorance and illiteracy of the defendants, their youth, the circumstances of public hostility, the imprisonment and the close surveillance of the defendants by the military forces, the fact that their friends and families were all in other states and communication with them necessarily difficult, and above all that they stood in deadly peril of their lives—we think the failure of the trial court to give them reasonable time and opportunity to secure counsel *was a clear denial of due process.*

"But passing that, and assuming their inability, even if opportunity had been given, to employ counsel, as the trial court evidently did assume, we are of opinion that, under the circumstances just stated, the necessity of counsel was so vital and imperative that the failure of the trial court to make an effective appointment of counsel was likewise *a denial of due process within the meaning of the Fourteenth Amendment.* \* \* \*" (Emphasis supplied.) 77 L ed at 171-172.

The right to counsel in capital cases established in *Powell v. Alabama* was extended in *Gideon v. Wainwright,* 372 US 335, 83 S Ct 792, 9 L ed 2d 799, 93 ALR2d 733 (1963) to noncapital cases. The court, referring to the earlier case of *Betts v. Brady,* 316 US 455, 62 S Ct 1252, 86 L ed 1595 (1942), said:

"\* \* \* It was held that a refusal to appoint counsel for an indigent defendant charged with a felony did not necessarily violate the Due Process Clause of the Fourteenth Amendment, which for reasons given the Court deemed to be the only applicable federal constitutional provision. \* \* \*" 9 L ed 2d at 802.

The court expressly overruled *Betts v. Brady* and reaffirmed the principles declared in *Powell v. Alabama.* See 9 L ed 2d at 805.

The right to counsel in the trial court established in *Powell v. Alabama* and *Gideon v. Wainwright* was extended to the appellate stage of the criminal prosecution by *Douglas v. California,* 372 US 353, 83 S Ct 814, 9 L ed 2d 811 (1963). It is clear that the opinion in *Douglas v. California* is based at least in part on the due process clause of the Fourteenth Amendment. The court said:

> "We are not here concerned with problems that might arise from the denial of counsel for the preparation of a petition for discretionary or mandatory review beyond the stage in the appellate process at which the claims have once been presented by a lawyer and passed upon by an appellate court. We are dealing only with the *first appeal,* granted as a matter of right to rich and poor alike (Cal Penal Code §§ 1235, 1237), from a criminal conviction. We need not now decide whether California would have to provide counsel for an indigent seeking a discretionary hearing from the California Supreme Court after the District Court of Appeal had sustained his conviction (see Cal Const, Art VI, § 4c; Cal Rules on Appeal, Rules 28, 29), or whether counsel must be appointed for an indigent seeking review of an appellate affirmance of his conviction in this Court by appeal as of right or by petition for a writ of certiorari which lies within the Court's discretion. But it is appropriate to observe that a State can, consistently with the Fourteenth Amendment, provide for differences so long as the result does not amount *to a denial of due process* or an 'invidious discrimination.' * * *" (Latter emphasis supplied.) 9 L ed 2d at 814.

See, also, Harlan, J., dissenting, 9 L ed 2d at 817.[①]

---

[①] "In holding that an indigent has an absolute right to appointed counsel on appeal of a state criminal conviction, the Court appears to rely both on the Equal Protection Clause and on the guarantees of fair procedure inherent in the Due Process Clause of the Fourteenth Amendment, with obvious emphasis on 'equal protection.'" 9 L ed 2d at 817.

We need not decide whether a state must afford an appeal as a matter of right in all criminal cases. It is sufficient to point out that Oregon has always provided appellate review as a part of its criminal procedure.[2] The statement of the Supreme Court about appellate review in Illinois is pertinent here.

"* * * Appellate review has now become an integral part of the Illinois trial system for finally adjudicating the guilt or innocence of a defendant. Consequently at all stages of the proceedings the Due Process and Equal Protection Clauses protect persons like petitioners from invidious discriminations. * * *" *Griffin v. Illinois*, 351 US 12, 76 S Ct 585, 100 L ed 891, at 898-899 (1956).

■ The due process right to assistance of counsel requires more than a *pro forma* representation. In *Powell v. Alabama*, supra, it was emphasized that the accused was entitled to the "effective" assistance of counsel. In *Anders v. California*, 386 US 738, 87 S Ct 1396, 18 L ed 2d 493 (1967), the court said:

"The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae. The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. * * *" 18 L ed 2d at 498.

In *United States v. Wade*, 388 US 218, 87 S Ct 1926, 18 L ed 2d 1149 (1967), the emphasis was on the crucial need for diligent representation by counsel

---

[2] General Laws of Oregon 1851, pp 255, 257; Deady, General Laws of Oregon 1845-1864, p 480, §§ 224, 226.

at the pretrial stages of the prosecution, but the court recognized that the same crucial need was present at all " 'critical' stages of the proceedings." The court said:

> "* * * In recognition of these realities of modern criminal prosecution, our cases have construed the Sixth Amendment guarantee to apply to 'critical' stages of the proceedings. The guarantee reads: 'In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel *for his defence.*' (Emphasis supplied) The plain wording of this guarantee thus encompasses counsel's assistance whenever necessary to assure a meaningful 'defence.'" 18 L ed 2d at 1156.

■■■ Since *Douglas v. California* has established appellate review as a critical stage of the criminal procedure we conclude that due process will not tolerate a deprivation of appellate review caused solely by the gross neglect of counsel. The failure to perform the simple procedure of timely filing a notice of appeal is not the "effective" assistance of counsel required by *Powell v. Alabama,* nor the diligent advocacy required by *Anders v. California.* The failure of counsel to timely file a notice of appeal after he has been requested or agreed to do so is incompetence as a matter of law and a denial of due process. This is equally true whether the negligent counsel has been appointed or retained. The "invidious discrimination" is not between the rich who can hire counsel and the poor for whom counsel must be appointed, but between those who are represented by competent counsel and those whose counsel prove to be grossly incompetent or culpably negligent.

■ Discrimination on account of poverty is not the only discrimination that violates the Fourteenth

Amendment. This is illustrated by *Dowd v. United States,* 340 US 206, 71 S Ct 262, 95 L ed 215, 19 ALR2d 784 (1951). In that case one Cook was convicted of murder in an Indiana court, was sentenced to life imprisonment and immediately confined in the state penitentiary. His efforts to file a notice of appeal were frustrated by the warden acting pursuant to prison rules. The Supreme Court held (1) that Indiana discriminated against Cook because he had "never had the same review of the judgment against him as he would have had as of right in 1931 but for the suppression of his papers," 95 L ed at 219, and (2) that "a discriminatory denial of the statutory right of appeal is a violation of the Equal Protection Clause of the Fourteenth Amendment." 95 L ed at 218. The court said:

> "* * * The Fourteenth Amendment precludes Indiana from keeping respondent imprisoned if it persists in depriving him of the type of appeal generally afforded those convicted of crime. * * *" 95 L ed at 219.

■ Discrimination which denies equal protection is fundamentally unfair and consequently is also a denial of due process. This is evident from the fact that cases such as *Douglas v. California* and *Anders v. California* are rested on both equal protection and due process grounds. Even the landmark decision in *Griffin v. Illinois,* 351 US 12, 76 S Ct 585, 100 L ed 891, 55 ALR2d 1055 (1956), was based on both Fourteenth Amendment guarantees of due process and equal protection. In *Coppedge v. United States,* 369 US 438, 82 S Ct 917, 8 L ed 2d 21 (1962), the court in referring to *Griffin v. Illinois* said:

> "* * * We found the failure of the State to provide for appellate review for indigents in

noncapital cases, when such review was available for all defendants able to purchase transcripts, an 'invidious discrimination' inconsistent with the guarantees of due process and equal protection of the laws of the Fourteenth Amendment. * * *" 8 L ed 2d at 29, Footnote 13.

In *Wainwright v. Simpson*, 360 F2d 307 (5th Cir. 1966), the court-appointed counsel, without consulting with or obtaining the consent of his client, failed to appeal the conviction. The court said:

"In Florida, as in Illinois, appellate review has now become an integral part of the state trial system for finally adjudicating the guilt or innocence of a defendant. One appealing from conviction for crime must be represented by counsel if his appeal is to be meaningful. However laudable his motive, court-appointed counsel for Simpson had no authority, without consulting with or obtaining the consent of his client, deliberately to forego Simpson's right to move for a new trial or to appeal. When he did so, counsel proved himself ineffective. More, he completely abdicated his function and deprived Simpson of the aid of any counsel at a critical stage of the criminal proceeding." 360 F2d at 309-310.

In *United States ex rel. Maselli v. Reincke*, 383 F2d 129 (2d Cir. 1967), a case in which retained counsel failed to file a notice of appeal, the court said:

"If counsel's representation is so 'horribly inept' as to amount to 'a breach of his legal duty faithfully to represent his client's interests,' Kennedy v. United States, 259 F.2d 883, 886 (5 Cir. 1958), cert. denied, 359 U.S. 994, 79 S.Ct. 1126, 3 L.Ed.2d 982 (1959), there has been a lack of compliance with the fundamental fairness essential to due process." 383 F2d at 132.

In a case in which retained counsel filed a notice of appeal, but thereafter through either culpable negli-

gence or intentional malfeasance permitted the appeal to be dismissed, the Supreme Court of Illinois granted a delayed appeal. The following language from the opinion is an excellent exposition of the modern rule:

"For a representative system of litigation to function, it is self-evident that under most circumstances clients must be bound by the acts of their lawyers. However, it is equally self-evident that a mechanical application of this legal proposition can lead to harsh results repugnant to commonly held notions of justice and fair play. (See Justice Black's dissent in Link v. Wabash Railroad Co.) These results can be even harsher in a criminal case than a civil one since in the latter suit the aggrieved client has, in theory, a malpractice action against his attorney for damages, while in the former no attorney can restore his client's lost liberty. * * *

"We find the consequences of the dismissal here most significant, for while the right of appeal in a criminal case is not *per se* of constitutional dimension (see Douglas v. People of State of California, 372 U.S. 353, 365, 83 S.Ct. 814, 9 L.Ed.2d 811, 819), any denial of it is subject to the due-process and equal-protection guarantees of the Federal and State constitutions. Moreover, recent decisions have implemented this right, providing that indigents are entitled to competent appointed counsel on appeal (Douglas v. California), even where pleas of guilty were made below (Milani v. Illinois, 386 U.S. 12, 87 S.Ct. 874, 17 L.Ed2d 702), and to free transcripts of the trial record. (Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L. Ed. 891.) These decisions reflect courts' concern with providing that any defendant who so desires can obtain at least one full appellate review of his conviction. * * *" *People v. Brown* (Ill. 1968) 235 NE2d 562, 565.

Other cases in which a delayed appeal or other appropriate relief has been granted to a convicted de-

fendant whose retained counsel has failed to timely file a notice of appeal include the following: *Leventhal v. Gavin*, 396 F2d 441 (1st Cir. 1968); *Kinsey v. Wainwright*, 251 FS 30 (M.D. Fla. 1965) (appeal dismissed by retained counsel without client's consent); *Hines v. United States*, 237 A2d 827 (D.C. Ct. of App., 1968). For another case involving appointed counsel see *Williams v. United States*, 402 F2d 548, 552 (8th Cir. 1968).

We hold that because of the culpable negligence of his counsel petitioner was deprived of his Fourteenth Amendment right to due process. Since the state's criminal process would be found lacking in fundamental fairness if it permitted the deprivation of appellate review by the culpable neglect of counsel, the state must provide a remedy adequate to restore the impaired right. Fortunately, Oregon has provided such a procedure as part of its Post-Conviction Hearing Act. ORS 138.530 directs the post-conviction court to grant relief when it is established that there has been:

> "A substantial denial in the proceedings resulting in petitioner's conviction, or in the appellate review thereof, of petitioner's rights under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void."

We note that relief is to be granted for a denial of constitutional rights in either the trial or the appellate court. We think the filing of the notice of appeal is a part of appellate review, even though the notice, as an administrative matter, is filed in the trial court. We are also satisfied that unless appropriate relief is granted the denial of petitioner's rights that occurred in this case will render his conviction void.

 We concur in the finding of the trial court that the Post-Conviction Hearing Act authorizes the granting of a delayed appeal when necessary to rectify a substantial denial of constitutional rights. ORS 138.520 provides that the relief which a court may grant includes

"\* \* \* release, new trial, modification ·of sentence, *and such other relief as may be proper and just.* \* \* \*" (Emphasis supplied.)

The phrase "such other relief as may be proper and just" conveys the same meaning as ORS 34.670, which directs a habeas corpus court "to dispose of the party as the law and justice of the case may require." As we pointed out in *Landreth v. Gladden,* 213 Or 205, 324 P2d 475 (1958), these phrases should be construed broadly to achieve the remedial purpose of the statutes.

 Although the act does not mention a delayed appeal the drafters intended such a remedy to be included.[⑨] We think the legislature also intended to provide a delayed appeal in those cases where such a remedy is "proper and just." The alternatives would be to discharge the defendant or to grant him a new trial, either of which would be, from the standpoint of proper judicial administration, a less desirable result. If defendant is now provided with an appeal on the merits he will be in the same position as if his counsel had timely filed the original notice of appeal.

The judgment of the trial court is affirmed.

DENECKE, J., specially concurring.

I specially concur to state that in my opinion the Due Process Clause can only be invoked when there is

---

[⑨] Collins and Neil, *The Oregon Postconviction-Hearing Act,* 39 Or L Rev 337, at 343-344.

state action. The Sixth Amendment is made applicable to the states only through the Fourteenth Amendment. The Fourteenth Amendment provides: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." I find the requisite state action present in the instant case. Such action consists of the state continuing to confine the defendant and refusing to grant the defendant an appeal although the defendant timely ordered his attorney to appeal and the statute on appeals was not complied with because of the error of defendant's counsel. *Shelley v. Kraemer*, 334 US 1, 68 S Ct 836, 92 L Ed 1161, 3 ALR2d 441 (1948).

PERRY, C. J., dissenting.

I am unable to agree with the majority that a federal constitutional question is raised under the facts of this case.

The Fourteenth Amendment to the Constitution of the United States, so far as applicable, reads as follows:

"* * * No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without the due process of law; * * *."

It is quite clear from a mere reading of the above amendment, and without the necessity of citations of authority, that this amendment is a prohibition against state action.

The thrust of the decisions of the Supreme Court of the United States is that due process requires the indigent defendant shall have the same rights before the law that is enjoyed by a person "of means", and that state action is found in the failure of the state

to provide the necessary means of perfecting .and carrying out of an appeal by an indigent that is afforded one who is able to pay for these means.

This is disclosed in *Douglas v. State of California,* 372 US 353, 355, 83 S Ct 814, 9 L ed 2d 811 (1963), which quotes with approval the language from *Griffin v. People of State of Illinois,* 351 US 12, 19, 76 S Ct 585, 100 L ed 891, 55 ALR2d 1055:

> " '* * * There can be no equal justice where the kind of an appeal a man enjoys depends on the amount of money he has.' "

Again in *Douglas v. State of California,* supra, 9 L ed 2d at p. 813:

> "* * * In Griffin v. Illinois, 351 US 12, 100 L ed 891, 76 S Ct 585, 55 ALR2d 1055, we held that a State may not grant appellate review in such a way as to discriminate against some convicted defendants on account of their poverty. There, as in Draper v. Washington, 9 L ed 2d 899, the right to a free transcript on appeal was in issue. Here the issue is whether or not an indigent shall be denied the assistance of counsel on appeal. In either case the evil is the same: discrimination against the indigent. For there can be no equal justice where the kind of an appeal a man enjoys 'depends on the amount of money he has.' *Griffin v. Illinois,* supra (351 US at p. 19)."

And again in *Anders v. California,* 386 US 738, 745, 87 S Ct 1396, 1400, 18 L ed 2d 493, 499, the court stated:

> "This procedure will assure penniless defendants the same rights and oportunities on appeal— as nearly as is practicable—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel."

I am able to agree with the majority that the time for appeal is a critical time for the assistance of counsel, and that the failure of counsel to file within the statutory time amounts to ineffective assistance of counsel, but I am unable to ascertain what relevance this has to the facts of this case.

The facts in this case are that the petitioner had employed his own counsel and his counsel had agreed to perfect the appeal, but through his counsel's neglect the statutory time for appeal passed. Wherein then did state action prevent petitioner's appeal? There is no showing that petitioner was in any way lacking in a right to an appeal or the means of perfecting it.

The only answer then that can logically be given is, while the state may provide for the orderly dispatch of cases by setting a reasonable time in which to appeal, it cannot enforce that statute in criminal cases. This simply means that an appeal in criminal cases is a matter of right. This view was rejected by this court in *Gairson v. Gladden,* 247 Or 88, 425 P2d 761 (1967).

While the language of the Illinois Supreme Court in *People v. Brown,* 39 Ill2d 307, 235 NE2d 562, a case involving a direct attack, not a collateral attack, upon the judgment, observed the concern of the Supreme Court of the United States to provide "that any defendant who so desires can obtain at least one full appellate review of his conviction," it did not say this right was unlimited. Nor did the Illinois court find a federal constitutional violation upon which to base its decision, but based its decision on what might be considered a desirable social policy, as the matter lay within the discretion of the appellate court.

In *Brown* the notice of appeal was filed within the statutory period and later the case was dismissed by the appellate court for lack of prosecution. The court stated, 235 NE2d at p. 565:

"* * * This distinction in itself mitigates against inflexibly applying this agency rule to waive substantive rights of defendants in criminal prosecutions. Further mitigation against adhering to an inflexible application of this rule stems from the realization that the dismissal of an action for want of prosecution *is within the discretion of the hearing court, with the right to reinstate likewise being a matter of judicial discretion* (Combs v. Steele, 80 Ill. 101).

"* * * * *

"* * * In keeping with this judicial attitude, and in light of the exceptional circumstances surrounding the defendant's representation at the appellate level, principally the strong inference that his lawyer had no intention of prosecuting his appeal, we hold the instant case is not a proper one for application of the general rule that a client is bound by the acts or failure to act of his lawyer. In so holding, we find it irrelevant whether the attorney was paid for the appeal, since in the event on nonpayment his proper remedy would have been to move to withdraw from the case rather than take no action and thereby forfeit defendant's appeal rights."

Other decisions cited by the majority find a constitutional denial in the indigency of the convicted appellant, or state action preventing a defendant from exercising his statutory rights.

In *United States v. Reincke*, 383 F2d 132 (2nd cir., 1967), a case in which the facts cry out for relief, the defendant had retained counsel at the trial. After conviction he advised his retained counsel of his de-

sire to appeal. When his retained counsel learned he was without funds to finance the appeal, he resigned without informing the defendant that as an indigent he would be furnished counsel for the appeal. This lack of knowledge of the right to an appeal through court appointed counsel forms the basis of the deci-sion. Note 7 of the opinion (p. 134) clearly discloses this:

> "It is also arguable, though the point was not raised on this appeal and we need not decide it, that drawing a distinction between cases in which the assistance of counsel on appeal was expressly requested of the State, e.g., Pate v. Holman, 341 F.2d 764 (5 cir. 1965), and those in which no such request was made, e.g., United States ex rel. Bjorn-sen v. LaVallee, 364 F.2d 489 (2 cir. 1966), is no longer permissible in light of the Supreme Court's emphasis in Miranda v. State of Arizona, 384 U.S. 436, 473, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) upon the importance of advising all defendants, whether they appear to be rich or poor, knowledge-able or ignorant, of their constitutional right to receive the assistance of counsel from the onset of the accusatory stage in criminal proceedings, a right which also extends, of course, to the appellate stage, Douglas v. State of California, 372 U.S. 353, 83 S.Ct. 814, 9 L. Ed. 2d 811 (1963)."

Thus the wrongful state action was found to lie in the failure of the court to advise the party of his right to appeal whether he had the financial means or not. This view was also rejected in *Gairson v. Gladden,* supra. *Reincke* cannot be considered as authority for holding that the delay of paid counsel in filing timely appeal is the denial of a constitutional right.

I can agree with the majority that the Supreme Court of the United States has expressed concern with the view that a convicted person should have at

least one appeal, but at no point have they ever said this is an unqualified right that may be enforced against the states through the Fourteenth Amendment. Each opinion is quite to the contrary. *Anders v. State of California,* 386 US 738, 87 S Ct 1396, 18 L ed 2d 493 (1967); *Swenson v. Bosler,* 386 US 258, 87 S Ct 996, 18 L ed 2d 33 (1967); *Shockey v. Illinois,* 375 US 22, 84 S Ct 83, 11 L ed 2d 43 (1963); *Douglas v. People of California,* 372 US 353, 83 S Ct 814, 9 L ed 2d 811 (1963); *Gideon v. Wainwright,* 372 US 335, 83 S Ct 792, 9 L ed 2d 799, 93 ALR2d 733 (1963).

The difference between the burden placed upon the state when the state retains counsel for an indigent and the burden placed upon a person able to procure his own counsel is ably set forth in *United States ex rel Darcy v. Handy,* 203 F2d 407, 425-426 (C.A. 3), cited with approval in *Davis v. Bomar,* 344 F2d 84, 87 (6th cir, 1965):

> " 'The concept of due process of law contained in the Fourteenth Amendment unquestionably involves the right to have the assistance of counsel for one's defense in a criminal case. The amendment, however, is directed only to action by a state and its command in this regard accordingly is that the state through its officers shall not deny to a defendant in a criminal case the effective assistance of counsel for his defense. This may well impose a definite obligation upon the state through its courts to appoint competent counsel for indigent defendants in criminal cases. There is, however, as Judge Huxman pointed out in Hudspeth, Warden v. McDonald, 10 Cir., 1941, 120 F2d 962, 968, *"a vast difference between lacking the effective assistance of competent counsel and being denied the right to have the effective assistance of competent counsel."* It is the latter only for which the state is responsible, the former being normally

the sole responsibility of the defendant who selected his counsel. * * * (Emphasis supplied.)

"'When counsel is retained by a defendant to represent him in a criminal case he acts in no sense as an officer of the state. For while he is an officer of the court his allegiance is to his client whose interests are ordinarily diametrically opposed to those of the state. It necessarily follows that any lack of skill or incompetency of counsel must in these circumstances be imputed to the defendant who employed him rather than to the state, the acts of counsel thus becoming those of his client and as such so recognized and accepted by the court unless the defendant repudiates them by making known to the court at the time his objection to or lack of concurrence in them.'"

As recently as March 26, 1969, the Supreme Court of Tennessee cited with approval *Darcy v. Handy,* supra, and *Davis v. Bomar,* supra. *State ex rel Robert E. Richmond v. C. Murray Henderson, Warden,* — Tenn —, 439 SW2d 263.

These cases alone have considered the burden of Federal due process placed upon the state where there has been no affirmative action by the state to prevent a defendant from exercising the privileges granted to all persons.

In my opinion this court should not attempt to envisage the future actions of the Supreme Court of the United States or leave the impression that its decision made this day is compelled by the Supreme Court.

Since the state provided a right of appeal and in no way prevented or misled the defendant to his detriment, I am unable to discover wherein the defendant's constitutional rights were denied him.

I would reverse the judgment of the trial court.

O'CONNELL, J., dissenting.

In the present case there is no basis for arguing that the accused was deprived of his right to appeal because of his indigency. He was deprived of review by this court simply because his counsel failed to timely file a notice of appeal.

*McKane v. Durston,* 153 US 684, 14 S Ct 913, 38 L Ed 867 (1894) holds that a review by an appellate court of the final judgment in a criminal case is not a necessary element of due process of law. That case has not been overruled. Our own cases are to the same effect. See, e.g., *Gairson v. Gladden,* 247 Or 88, 425 P2d 761 (1967).

*Douglas v. California,* 372 US 353, 83 S Ct 814, 9 L Ed2d 811 (1963); *Lane v. Brown,* 372 US 477, 83 S Ct 768, 9 L Ed2d 892 (1963), and *Anders v. California,* 386 US 738, 87 S Ct 1396, 18 L Ed2d 493 (1967), relied upon by the majority, are not to the contrary. They merely hold that *if* appeal procedure is provided it must be made available equally to the rich and the poor. These decisions rest upon the equal protection clause of the Fourteenth Amendment; they do not hold that appellate review is necessary to satisfy the due process requirement of the Fourteenth Amendment.

Apparently the majority accepts the view that appellate review of a judgment of conviction is not a necessary element of due process and that the legislative assembly could entirely eliminate criminal appeals. The reasoning must be, then, that although appellate review may be wholly abolished, once it is granted by the legislature the state must, as a matter of constitutional law, take such additional action as is necessary to see that *all* defendants, whether rich or poor, do not lose their right to appeal through

their own ignorance of their rights or through their own negligence or the negligence of their attorney, appointed or retained. The state's failure to act under these circumstances is deemed by the majority to be "state action" within the meaning of the Fourteenth Amendment.

According to this reasoning it is not enough for the state to see that the accused has counsel—the state must also see that counsel carries out his duties in perfecting a timely appeal. This, it is said, is necessary in order to satisfy the requirements of due process.

It seems to me that this reasoning can be supported only upon the premise that the accused must be afforded a right to appellate review as a matter of due process. The majority is saying, in effect, that appellate review is so important to safeguard the accused's rights, it is not enough that he be given counsel, but that he must be assured the right of appeal if he desires it. If appellate review is this important, it is a necessary element of due process and the state could not abolish it. We might so interpret our own constitution (Oregon Constitution, Article I, § 10), but until we do there is nothing compelling us to take the position which the majority takes in the present case. Under the view now adopted if the accused was not informed by his counsel that he had a right to an appeal, the state would have to inform him or give him a delayed appeal. Since this is directly contrary to *Gairson v. Gladden,* 247 Or 88, 425 P2d 761 (1967), that case should be overruled.

I think that the majority has been driven to its misinterpretation of the due process clause of the Fourteenth Amendment and the "due course of law" provision of Oregon Constitution, Article I, § 10 because

it finds abhorrent the idea that a man could lose the right to appeal through no fault of his own. I, too, find the spectacle distasteful, but I think that it is for the legislature and not for us to correct this defect in our criminal procedure.

It is to be borne in mind that the view I take does not deny relief to an accused who asserts that the judgment of conviction was void because his constitutional rights were violated in the procedure leading up to judgment. In that case he is entitled to post-conviction relief under ORS 138.510 to 138.680.

PERRY, C. J., concurs in this dissent.