No. 51　　　　October 5, 2017　　　　15

IN THE SUPREME COURT OF THE
STATE OF OREGON

MICHAEL R. HAYNES,
*Petitioner on Review,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent on Review.*

(CA A162586, SC S064442)

On review from the Court of Appeals.*

Argued and submitted May 12, 2017.

Marc D. Brown, Chief Deputy Defender, Salem, argued the cause and filed the briefs for the petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender, Office of Public Defense Services.

Ryan Kahn, Assistant Attorney General, Salem, argued the cause and filed the brief for the respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General and Benjamin Gutman, Solicitor General.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Nakamoto, Flynn, and Duncan, Justices.**

FLYNN, J.

The order of dismissal of the Court of Appeals is affirmed.

_____
　*　On judicial review of a Final Order of the Board of Parole and Post-Prison Supervision, dated May 4, 2016.

　**　Brewer, J., retired June 30, 2017, and did not participate in the decision of this case.

**FLYNN, J.**

Petitioner seeks judicial review of a final order of the Board of Parole and Post-Prison Supervision that denied his petition to change the terms of his life imprisonment to allow for the possibility of release. The Court of Appeals dismissed the case because petitioner's appointed counsel missed the deadline for filing a petition for judicial review in that court. We allowed review to consider whether petitioner, who is statutorily entitled to be assisted by counsel on review, should or must be allowed to proceed with his untimely petition for review when the late filing was entirely due to neglect by appointed counsel.

Petitioner argues that his statutory right to counsel must be construed as a right to adequate counsel, that he was denied that statutory right when his counsel missed the filing deadline for judicial review, and that this court should address the statutory violation by excusing the untimely filing. Petitioner also contends that a denial of judicial review under these circumstances violates his right to due process under the Fourteenth Amendment of the United States Constitution and that this court must allow a delayed appeal to vindicate petitioner's due process rights.

We conclude that petitioner is not entitled to the relief that he seeks. Jurisdiction for judicial review of a board order is a creation of statute, ORS 144.335, and that jurisdiction depends upon filing a petition for review within the time period provided in the statute. Even if petitioner is correct that he has a statutory right to *adequate* counsel on review which has been denied because of appellate counsel's late filing, he is not correct that the appropriate remedy is to excuse the jurisdictional requirement of a timely petition. We also conclude that the federal constitution does not dictate a different result, because the nature of the administrative judicial review process is such that state law is the only source of both petitioner's right to judicial review and his right to the assistance of counsel on review.

## I.   FACTS AND PROCEDURAL BACKGROUND

Petitioner is serving a sentence of life imprisonment without possibility of parole or release for a 1986 aggravated

murder. At petitioner's request, the board held a hearing to determine if petitioner "is likely to be rehabilitated within a reasonable period of time" and, if so, to change the terms of his confinement to "life imprisonment with the possibility of parole, or work release." *See* ORS 163.105 (1985).[1] The board found that petitioner failed to prove that he is likely to be rehabilitated within a reasonable time, petitioner sought administrative review, and the board issued a final order adhering to its decision.

Upon learning that the board had issued its final order, petitioner contacted the Office of Public Defense Services (OPDS) to pursue judicial review on his behalf.[2] Although OPDS assured petitioner that it would file a petition for review, due to a calendaring error, the lawyer assigned to petitioner's case filed the petition six days after the statutory deadline. The Court of Appeals, on its own motion, dismissed review based on the untimely filing.

Petitioner filed a motion for reconsideration in which he argued that the untimely filing should be excused, given that it was entirely the fault of appointed counsel. The Court of Appeals denied reconsideration, and this court allowed review.

## II.   DISCUSSION

Petitioner's arguments rest on the initial premise that his statutory right to the assistance of counsel to pursue judicial review of the board's order is a right to *adequate* assistance of counsel. To vindicate that right, petitioner argues, the court should allow additional time to file a petition for review when appointed counsel fails to timely file a petition. According to petitioner, the court has authorized similar relief to address inadequate representation in other

---

[1] ORS 163.105 describes the process by which certain defendants who have served a minimum period of confinement for aggravated murder may be determined to be eligible to have the terms of their confinement changed from life imprisonment *without* the possibility of parole to life imprisonment *with* the possibility of parole. Throughout the opinion, we rely on ORS 163.105 (1985), the version of the statute in effect at the time petitioner committed his crime. *See Janowski/Fleming v. Board of Parole*, 349 Or 432, 437, 245 P3d 1270 (2010) (looking to version of ORS 163.105 in effect at the time of the prisoners' crimes to determine rights related to parole eligibility).

[2] The legislature has specified that the Public Defense Services Commission, which governs OPDS, "shall provide for the representation of financially eligible persons petitioning for review" of board orders of the type at issue here. ORS 144.337(1).

contexts and should do so in the "murder-review" context as well.[3] Petitioner also argues that he is entitled to that remedy as a matter of the due process guaranteed by the Fourteenth Amendment to the United States Constitution.[4]

A.  *The Murder Review Statutory Framework*

As context for petitioner's arguments, we begin with a brief overview of the murder-review process. At the time petitioner committed his crime, ORS 163.105(1) (1985) provided that a person convicted of aggravated murder, if not sentenced to death, shall be sentenced to "life imprisonment" and ordered "confined for a minimum of 30 years without the possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp." After 20 years, however, the prisoner becomes eligible for a "murder-review" hearing, at which the board considers whether to change the terms of the prisoner's confinement to "life imprisonment with the possibility of parole or work release." ORS 163.105(2), (3) (1985).[5]

---

[3]  Both parties refer to hearings pursuant to ORS 163.105 as "murder review" hearings, and we adopt that terminology for this opinion.

[4]  Petitioner's constitutional argument relies on the Due Process Clause of the Fourteenth Amendment. Neither the Sixth Amendment to the United States Constitution nor Article I, section 11, of the Oregon Constitution guarantees a right to counsel outside of criminal prosecutions, and we have held that the Oregon Constitution contains no due process clause. *See State ex rel Juv. Dept. v. Geist*, 310 Or 176, 188 n 13, 796 P2d 1193 (1990).

[5]  ORS 163.105 (1985) provided, in relevant part:

"(1) *** If sentenced to life imprisonment, the court shall order that the defendant shall be confined for a minimum of 30 years without possibility of parole, release on work release or any form of temporary leave or employment at a forest or work camp.

"(2) At any time after 20 years from the date of imposition of a minimum period of confinement pursuant to subsection (1) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time.

"*****

"(3) If, upon hearing all of the evidence, the board, upon a unanimous vote of all five members, finds that the prisoner is capable of rehabilitation and that the terms of the prisoner's confinement should be changed to life imprisonment with the possibility of parole, or work release, it shall enter an order to that effect and the order shall convert the terms of the prisoner's confinement to life imprisonment with the possibility of parole or work release. Otherwise the board shall deny the relief sought in the petition."

If, after such hearing, the board denies a prisoner's petition to change the terms of confinement, the prisoner has a right to seek judicial review of the board's order. ORS 144.335(1). One of the conditions for seeking judicial review is that the petition for review of the board's order "shall" be filed "within 60 days after the date the board mails the order." ORS 144.335(4). Finally, and at the core of petitioner's argument, "the Public Defense Services Commission shall provide for the representation of financially eligible persons petitioning for review" of the board's order. ORS 144.337(1).

B.   *The Nature of the Right to Counsel on Review*

According to petitioner, that statutory right to representation by counsel "implicitly requires * * * the provision of *adequate* counsel." (Emphasis in original.) For that premise, petitioner relies primarily on *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 796 P2d 1193 (1990), in which we held that the statutory right to counsel applicable in a termination of parental rights case is a right to "adequate" counsel. In *Geist*, the mother whose parental rights were at stake was provided counsel under a statute that guaranteed indigent parents in termination cases a right to "an attorney to represent them at state expense." *Id.* at 180 n 3. The court-appointed lawyer who represented the mother at the termination hearing had been recently removed from a list of lawyers who were qualified to represent clients in such proceedings, and the lawyer moved to withdraw. The court denied the lawyer's motion to withdraw and ultimately terminated the mother's parental rights.

On appeal, the mother challenged the termination judgment on the ground that she had been denied adequate representation of counsel. The Court of Appeals "assumed that the legislature intended a statutory right to counsel to include a right to adequate counsel," and this court expressly agreed with that premise. *Id.* at 185. We also concluded that, "[a]bsent an express legislative procedure for vindicating the statutory right to adequate counsel, this court may fashion an appropriate procedure." *Id.*

Generalizing from the holding in *Geist*, petitioner argues that any statute that grants a right to state-provided counsel implicitly grants a right to adequate counsel, because

granting a right to counsel would be a pointless legislative exercise if the right could be satisfied by counsel who is not adequate to fill that role. As intuitively sound as that proposition may seem in the abstract, however, our more recent decision in *Dept. of Human Services v. T.L.*, 358 Or 679, 687-693, 369 P3d 1159 (2016), suggests that we will not simply assume that every statutory right to counsel necessarily grants a right to *adequate* counsel. In *T. L.*, although the parties and the Court of Appeals had accepted that the rationale of *Geist* extends to counsel appointed to represent parents in dependency proceedings other than termination, we undertook to "independently address" that proposition. *Id.* at 687. In doing so, we focused on factors that the court uses to determine whether the "nature of particular juvenile proceedings and due process require the appointment of counsel." *Id.* at 691-93. Considering those factors in the particular context of a proceeding to change a child's permanency plan away from reunification with the parents, we concluded, based on "the complex nature of the legal and factual issues, and the gravity of the interests at stake," that appointed counsel in such proceedings "must be adequate." *Id.* at 693.

Moreover, as *Geist* illustrates, even when the court accepts the proposition that the legislature granted a right to *adequate* counsel, the more pertinent inquiry is "what standard of adequacy" should apply. 310 Or at 187. In *Geist*, the court rejected the mother's argument that the court should evaluate her attorney's performance under the standard of adequate representation that the court employs in criminal cases to protect a criminal defendant's constitutional right to counsel. *Id.* at 187. Instead, the court concluded that the flexible standard of "fundamental fairness" is the proper standard for deciding whether parents have received adequate representation in a termination case.[6] *Id.* at 188-90. Under that standard, this court determined, the mother received adequate assistance of counsel in the termination proceeding. *Id.* at 194.

---

[6] *Geist* emphasizes that, in general, "fundamental fairness requires that appointed counsel exercise professional skill and judgment," but that "the search for a single, succinctly-stated standard of performance, objectively applicable to every case, is 'a fool's errand.'" 310 Or at 190 (quoting *Krummacher v. Gierloff,* 290 Or 867, 874, 627 P2d 458 (1981)).

Petitioner does not meaningfully analyze whether and to what extent ORS 144.337(1) grants a right to *adequate* counsel to assist with the judicial review of petitioner's parole board order, and ultimately we need not decide those questions in this case. That is so because, even if counsel's failure to timely file the petition for review denied petitioner the right to counsel granted by ORS 144.337(1), as discussed below, that denial does not justify the remedy of a late review process—the only remedy that petitioner seeks.

C.   *The Remedy of a Late Review Process*

As indicated above, petitioner contends that this court should reverse the dismissal of his petition for review as the remedy for his attorney's failure to provide adequate representation on review. He argues that this remedy follows from existing state-law principles and, alternatively, that the remedy is required as a matter of due process under the Fourteenth Amendment. As is our custom, we consider petitioner's subconstitutional arguments before considering his constitution (due process) arguments. *See, e.g.*, *State v. Barrett*, 350 Or 390, 398, 255 P3d 472 (2011) (describing court's usual practice).

1.   *Late review as a remedy under Oregon law*

For his argument that this court can and should authorize a late petition for review when a prisoner's counsel fails to file a timely petition for review, petitioner again relies primarily on *Geist*—specifically on the court's conclusion that "[a]bsent an express legislative procedure for vindicating the statutory right to adequate counsel, this court may fashion an appropriate procedure." 310 Or at 185. Petitioner argues that *Geist* requires the court to fashion an "appropriate procedure" to vindicate the assumed violation of his right to counsel under ORS 144.337(1). Petitioner contends that here, where counsel's inadequacy deprives petitioner of any opportunity to obtain judicial review of the board's final order, a delayed judicial review is an "appropriate remedy" because it is the sole remedy that can vindicate his right.

We conclude that allowing an untimely petition for review is not an appropriate remedy for counsel's failure to file a petition for judicial review within the time limit set by

the legislature. The judicial review process that petitioner seeks exists because the legislature conferred jurisdiction on the Court of Appeals to review the administrative decisions of the board. We have repeatedly held that that when the legislature confers jurisdiction on the courts to review an agency's final order, the courts' jurisdiction depends upon the timely filing of a petition for review. *See, e.g.*, *Ososke v. DMV*, 320 Or 657, 661, 891 P2d 633 (1995) ("[T]he untimely filing of a petition for judicial review of a final order of DMV is a jurisdictional defect."); *1000 Friends of Oregon v. LCDC (Clatsop Co.)*, 301 Or 622, 632, 724 P2d 805 (1986) ("The Court of Appeals' jurisdiction to review LCDC orders is purely statutory and depends for its existence on the timely filing of a request for review from a final order."); *cf. State v. Harding,* 347 Or 368, 373, 223 P3d 1029 (2009) ("Because defendant's notice of appeal was not timely filed, neither the Court of Appeals nor this court has jurisdiction over the trial court judgment challenged by defendant in this case.").

To be sure, the legislature can and does create exceptions to the timelines that it sets for obtaining judicial review. *See, e.g.,* ORS 138.071(5) (permitting defendant in criminal case to file late direct appeal if he or she shows a colorable claim of error and "that the failure to file a timely notice of appeal is not attributable to the defendant personally"); ORS 138.650(2)(a) (same, for review of post-conviction claims). But there are no statutory exceptions to the jurisdictional time limit in ORS 144.335(4), which requires that, if a person "seeks judicial review of a final order of the board, the person shall file a petition for judicial review with the Court of Appeals within 60 days[.]" The statute does not provide, for example, that the person shall file the petition for review within 60 days "except for good cause" or "unless the person was denied the assistance of counsel," and we decline to construe the separate grant of a right to counsel in ORS 144.337(1) as implicitly creating an exception to the jurisdictional time limits.

Nevertheless, petitioner argues that *Geist* offers a path around that statutory jurisdictional obstacle. Although he recognizes that *Geist* did not authorize jurisdiction over an untimely appeal, petitioner urges us to understand

*Geist*'s holding—that the court "may fashion an appropriate procedure" to vindicate a statutory right to adequate counsel—as rooted in principles of equity that apply here as well. Petitioner observes that *Geist*, in a footnote following the quoted holding, cites to cases arising in equity. *See Geist*, 310 Or at 185 n 11 (citing *Stan Wiley v. Berg*, 282 Or 9, 21-23, 578 P2d 384 (1978), and *Day v. Griffith*, 283 Or 393, 403, 584 P2d 261 (1978)). According to petitioner, the balance of equities here clearly favors excusing his untimely filing, so this court should allow a late filing as a matter of equity. However, petitioner identifies no authority for his proposition that equitable principles make it appropriate for this court to override time limits on statutory appellate jurisdiction, and we are aware of none.[7] Given the strict time limits that the legislature has imposed when creating jurisdiction for judicial review of board orders, allowing a late review is not an "appropriate procedure" to vindicate petitioner's statutory right to counsel.

Petitioner next argues that the murder-review process is similar enough to a criminal proceeding that we should provide the same remedy for his counsel's failure to file a timely petition for review as we have approved for the failure of a criminal defendant's counsel to file a timely direct appeal of the criminal conviction. He relies on *Shipman v. Gladden*, 253 Or 192, 453 P2d 921 (1969), in which the petitioner sought post-conviction relief after his criminal defense counsel failed to file a timely direct appeal from the petitioner's criminal conviction, and this court approved the remedy of a delayed appeal. Petitioner is correct that

---

[7] Petitioner recommends the doctrine of equitable tolling as roughly apropos, relying on the Supreme Court's description of that doctrine in *Lozano v. Montoya Alvarez*, __ US __, 134 S Ct 1224, 1231-32, 188 L Ed 2d 200 (2014): "[E]quitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." The Supreme Court has emphasized, however, that the doctrine is not used to avoid time bars that are jurisdictional. *See United States v. Kwai Fun Wong*, __ US __, 135 S Ct 1625, 1631, 191 L Ed 2d 533 (2015) (explaining that doctrine of equitable tolling can pause the running of a statute of limitations in actions between private parties and suits against the United States under a statute waiving sovereign immunity, unless Congress "made the time bar at issue jurisdictional"); *Bowles v. Russell*, 551 US 205, 214, 127 S Ct 2360, 168 L Ed 2d 96 (2007) (explaining that "timely filing of a notice of appeal in a civil case is a jurisdictional requirement" and that "Court has no authority to create equitable exceptions to jurisdictional requirements").

*Shipman* illustrates an exception to the rule that the court will not consider appeals filed outside of the timelines set by the legislature. However, the exception is entirely a product of the context in which *Shipman* arose.

First, the *Shipman* court concluded that criminal defendants have a right under the Fourteenth Amendment to the effective assistance of counsel in an appeal as of right from a criminal conviction. 253 Or at 198-99 (citing *Anders v. California*, 386 US 738, 87 S Ct 1396, 18 L Ed 2d 493 (1967); *Douglas v. California*, 372 US 353, 83 S Ct 814, 9 L Ed 2d 811 (1963); *Griffin v. Illinois*, 351 US 12, 76 S Ct 585, 100 L Ed 891 (1956)); s*ee also Evitts v. Lucey*, 469 US 387, 396, 105 S Ct 830, 83 L Ed 2d 821 (1985) (confirming, sixteen years after *Shipman*, that a criminal defendant's appeal as of right from the conviction "is not adjudicated in accord with due process of law if the appellant does not have the effective assistance of an attorney").[8] Thus, as we held in *Shipman,* when the state denied the petitioner direct appellate review of his criminal conviction due to the "culpable neglect of counsel," he was deprived of a right guaranteed by the Fourteenth Amendment, and the state was required to "provide a remedy adequate to restore the impaired right." 253 Or at 203.

Second, the court in *Shipman* explained that the relief the petitioner sought was available as a matter of Oregon law under the Post-Conviction Hearing Act, which directs the court to grant relief for a denial of a criminal defendant's constitutional rights in either the trial or the appellate courts. *Id.* at 203 (citing ORS 138.530). The court emphasized that the act specifically "provides that the relief which a court may grant includes '*** such other relief as may be proper and just'" and concluded that the legislature intended "such other relief" to include the remedy of a delayed appeal. *Id.* at 204 (quoting ORS 138.520).

---

[8] The earlier right-to-counsel cases, on which *Shipman* relied, tended to derive support from both the Due Process and Equal Protection Clauses of the Fourteenth Amendment. *Evitts*, 469 US at 403 (quoting *Bearden v. Georgia,* 461 US 660, 665, 103 S Ct 2064, 76 L Ed 2d 221 (1983), for the proposition: "Due process and equal protection principles converge in the Court's analysis in these cases."). *Evitts*, however, announced a right to effective assistance of counsel derived entirely from the Due Process Clause.

The relief afforded to the petitioner in *Shipman* thus was rooted in two sources of authority that do not exist here: the due process right to effective assistance of counsel in appeals as of right from a criminal conviction and an express statutory directive that the court provide relief to vindicate that constitutional right. Here, no statute provides, or directs the court to provide, relief from the jurisdictional requirement that petitioner file a timely petition for judicial review of a parole board order. Moreover, as we will explain below, petitioner has no constitutional right to judicial review of the board's decision or to the assistance of counsel in challenging that decision. Thus, *Shipman* does not alter our conclusion that allowing review to proceed outside of the jurisdictional time limit is not an "appropriate procedure" to vindicate petitioner's statutory right to counsel.

2.  *Late review as a remedy required by the Due Process Clause*

Petitioner also contends that this court must make an exception to the 60-day jurisdictional deadline in order to prevent a violation of petitioner's right to due process. According to petitioner, because the Oregon legislature has granted a right to judicial review of the board's order, petitioner has a due process right to that judicial review that cannot be denied on the basis of "a calendaring error on the part of his appellate counsel, a state actor." We disagree.

The Due Process Clause of the Fourteenth Amendment guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." Thus, in evaluating a claimed due process violation, the threshold inquiry "is whether the state has deprived a person of a liberty or property interest within the meaning of the Due Process Clause." *Stogsdill v. Board of Parole*, 342 Or 332, 336, 154 P3d 91 (2007) (citing *Wilkinson v. Austin,* 545 US 209, 224, 125 S Ct 2384, 162 L Ed 2d 174 (2005)); *see also Greenholtz v. Nebraska Penal Inmates*, 442 US 1, 7, 99 S Ct 2100, 60 L Ed 2d 668 (1979) (looking to the nature of the claimed interest to determine if the Due Process Clause applies). If "there exists a liberty or property interest of which a person has been deprived," the second inquiry is

"whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 US 216, 219, 131 S Ct 859, 178 L Ed 2d 732 (2011).

> a. Protected liberty interest

At the threshold step of the analysis, we accept petitioner's premise that ORS 163.105 (1985) confers a constitutionally significant "liberty interest" in having a sentence of life without the possibility of parole changed to permit the possibility of parole. Although "[t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence," state parole statutes can create a constitutionally protected liberty interest. *Swarthout*, 562 US at 220. It is not enough, however, that a state offers the mere "possibility" of parole; rather, a protected liberty interest is created only when the statute uses mandatory language that "creates a presumption that parole release will be granted" when certain necessary findings have been made. *Board of Pardons v. Allen,* 482 US 369, 377-78, 107 S Ct. 2415, 96 L Ed 2d 303 (1987) (quoting *Greenholtz*, 442 US at 12); *see also* Evitts, 469 US at 401 ("when a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution—and, in particular, in accord with the Due Process Clause[.]").

Like the language of the statutes discussed in *Allen* and *Greenholtz*, ORS 163.105 (1985) uses mandatory language that creates a presumption that the board "shall" change the terms of the prisoner's confinement to life with the possibility of parole when the board makes the designated finding. Moreover, this court has previously held that an Oregon parole release statute created a protected liberty interest in being released on a date that has been set for release. *Stogsdill*, 342 Or at 335-36.

The board makes little effort to counter petitioner's argument that he has a protected liberty interest in becoming eligible for early release, except to suggest that the interest is a step removed from being given a release date—and, thus, "more tenuous" than the liberty interest that we identified in *Stogsdill*. But that distinction appears to be immaterial

given our discussion of the applicable parole framework in *Janowski/Fleming v. Board of Parole*, 349 Or 432, 245 P3d 1270 (2010). In *Janowski*, we undertook an extensive analysis of the parole statutes and regulations that are applicable to prisoners who committed aggravated murder during the era in which petitioner here committed his crime. We concluded that, under that statutory and regulatory framework, once the board changes the terms of a prisoner's confinement under ORS 163.105 (1985) to allow the possibility of parole, the board must set—or must already have set—a scheduled parole release date.[9] *Id.* at 453. *Janowski* did not analyze whether ORS 163.105 (1985) creates a protected liberty interest in the change of an inmate's confinement terms, but its conclusion undermines the board's suggestion that a decision under ORS 163.105 (1985) to allow the possibility of release does not necessarily result in a release date, the only reason that the board offers for distinguishing *Stogsdill*. We, thus, accept petitioner's premise that ORS 163.105 (1985) creates a liberty interest within the meaning of the Due Process Clause and, thus, that petitioner is entitled to some measure of due process when the board denies a request to change a prisoner's terms of confinement.

   b.   Constitutionally sufficient process

   The more challenging task for petitioner is to establish that a right to judicial review with the assistance of adequate counsel is among the procedural protections that the Due Process Clause demands when a liberty interest in parole is at stake. The nature of the procedural protections that due process requires to vindicate a liberty interest depends upon the nature of the liberty interest at issue. *See Swarthout*, 562 US at 220. The United State Supreme Court has already determined that, when the liberty interest at issue is a state-created opportunity for parole, the Due Process Clause guarantees no more than "minimal" process, which is limited to an opportunity to be heard and a statement of the reasons why parole was denied. *Swarthout*, 562 US at 220 (citing *Greenholtz*, 442 US at 16).

_____

[9] The parole "release date" referred to in *Janowski* is not a date on which release is guaranteed, but it is a scheduled release date that may be postponed for only three statutorily prescribed reasons. 349 Or at 457 (citing ORS 144.125(2) (1985)).

As petitioner acknowledges, *Swarthout* means that a state satisfies the requirements of the Due Process Clause without providing either a right to the assistance of counsel in the murder-review process or a right to judicial review of the board's decision. Yet petitioner views the "minimal" process that *Swarthout* prescribes for parole decisions as essentially only a floor. According to petitioner, by enacting statutes that grant the additional protection of judicial review with the assistance of counsel, Oregon has made a "meaningful opportunity" to pursue judicial review part of the process to which petitioner is entitled under the Due Process Clause.

As support for his theory that a state statute can expand the "minimal" protections that the Due Process Clause otherwise requires when a state denies parole, petitioner cites only the well established principle that a statute can create the kind of interest in liberty (or property) to which due process protections will apply. *See Wolff v McDonnell*, 418 US 539, 557, 94 S Ct 2963, 41 L Ed 2d 935 (1974) (explaining that statute granting prisoners a right to "good time" that could be forfeited only for serious misbehavior created an "interest" that "is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle [prisoners] to those minimum procedures appropriate under the circumstances and required by the Due Process Clause"); *see also Stogsdill*, 342 Or at 336 (Oregon statutes directing parole board to set release date for prisoner "created a protected liberty interest, which required the board to provide him with some process"). But whether a statute can create an interest in liberty or property that is protected by the Due Process Clause is a separate inquiry from whether a statutory process for protecting that interest becomes part of the procedures that the Due Process Clause requires in order to protect the interest. *See Swarthout*, 562 US at 219 (describing the two-stage inquiry under the Due Process Clause).

Nevertheless, petitioner's theory is reminiscent of the reasoning that led the United States Supreme Court to conclude in *Evitts* that, if a state grants a right to appeal criminal convictions, then the Due Process Clause precludes the state from denying that right on the basis of appointed

counsel's failure to meet a deadline. 469 US at 396. The defendant in *Evitts* appealed his criminal conviction, but the appeal was dismissed when his retained lawyer failed to file a required "statement of appeal." The defendant then sought federal habeas corpus relief, contending that the dismissal of his appeal for an omission that was entirely due to his lawyer's ineffective representation violated his constitutional right to due process. The state argued that, because states are under no constitutional imperative to provide a right to appeal criminal convictions,[10] "whatever a state does or does not do on appeal—whether or not to have an appeal and if so, how to operate it—is of no due process concern to the Constitution." *Id.* at 400.

The Court rejected the state's argument, explaining that, although the defendant's right to an appeal process was purely a statutory right, once a state creates a right to appeal that is "an integral part of the *** system for finally adjudicating the guilt or innocence of a defendant," it must decide those appeals using procedures that comport with the protections of the Fourteenth Amendment. *Id.* at 393 (quoting *Griffin*, 351 US at 18-20). The Court then held that those constitutionally required procedures included "the effective assistance of an attorney" to assist on direct appeal. *Evitts*, 469 US at 396. Applying that rule, the Court concluded that the state could not deny the defendant's appeal based on what was, in effect, a violation of his due process right to the effective assistance of counsel on direct appeal. *Id.* at 400.

At first glance, *Evitts* could be taken to support petitioner's theory that, for any statutory grant of the right to appeal a decision affecting criminal defendants, there is a due process right to pursue that process with the assistance of counsel. Other decisions clarify, however, that the *Evitts* rule reaches no further than the circumstances of *Evitts*—a direct appeal process that is an integral part of the state's system for adjudicating guilt or innocence. For example, although a state may also allow a *discretionary* appeal to the highest court, in addition to an appeal as of right to challenge

---

[10] As the court explained in *Evitts*, it had long ago "held that the Constitution does not require States to grant appeals as of right to criminal defendants seeking to review alleged trial court errors." 469 US at 393 (citing *McKane v. Durston*, 153 US 684, 14 S Ct 913, 38 L Ed 867 (1894)).

a conviction, there is no due process right to pursue that discretionary appeal with the assistance of counsel. *Ross v. Moffitt*, 417 US 600, 610, 94 S Ct 2437, 41 L Ed 2d 341 (1974). Applying that rule in a later case, *Wainwright v. Torna*, 455 US 586, 587-88, 102 S Ct 1300, 71 L Ed 2d 475 (1982), the Court held that a criminal defendant whose retained lawyer failed to file a timely petition for discretionary review in the state's highest court had no due process right to pursue review with the assistance of counsel and, thus, no due process right to a delayed opportunity for review. Similarly, in *Pennsylvania v. Finley*, 481 US 551, 555, 107 S Ct 1990, 95 L Ed 2d 539 (1987), the Court held that, although a state may allow a process for collateral challenges to a conviction (such as a post-conviction relief act), the defendant has no constitutional right to pursue that process with the assistance of counsel. As the Court explained in *Finley*, "[s]tates have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." *Id.* at 557 (internal citation omitted).

As already emphasized, states have no constitutional obligation to provide for judicial review of parole decisions. *See Swarthout*, 562 US at 220-21. Thus, when a state provides a statutory process for judicial review of a parole decision, inmates have no due process right to be assisted by adequate counsel before the petition for review is denied. *See Finley*, 481 US at 555; *Wainright*, 455 US at 587-88.

That answer is not changed by Oregon's adoption of a statutory right to counsel to assist with judicial review, in addition to a statutory process for judicial review. *Finley* provides the most pertinent guidance on this point. In *Finley*, a prisoner whose murder conviction had been affirmed on direct appeal sought relief under Pennsylvania's Post Conviction Hearing Act, which afforded a statutory right to appointed counsel to assist with the process. Instead of pursuing the prisoner's claim, his appointed counsel advised the court that he saw no merit to the claim, and the post-conviction court dismissed the case. On review, the state appellate court held that the attorney's performance failed to satisfy the standard that the Due Process Clause demands when counsel is appointed to assist with a direct criminal

appeal and, therefore, that the dismissal of the prisoner's case violated his constitutional right to the effective assistance of counsel.[11] 481 US at 553-54.

In the Supreme Court, the prisoner relied on *Evitts* for the proposition that a statutory right to counsel must be equivalent to the due process right to counsel, but the Court disagreed. 481 US at 557-58. As the Court explained:

> "the fact that the defendant has been afforded assistance of counsel in some form does not end the inquiry for federal constitutional purposes. Rather, it is the source of that right to a lawyer's assistance, combined with the nature of the proceedings, that controls the constitutional question."

*Id*. at 556. The Court emphasized that the nature of the proceeding—a collateral challenge to a criminal conviction—is "not part of the criminal proceeding itself," that "[s]tates have no obligation to provide this avenue of relief, and [that] when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." *Id*. at 557 (internal citation omitted). Given the nature of the proceedings, the Court concluded that the only source of the right to counsel in *Finley* was state law and, accordingly, it rejected the state court's conclusion that dismissing the prisoner's case would violate his rights under the Due Process Clause. *Id*. at 559.

Here, too, the proceeding—judicial review of a board decision regarding the possibility of parole—is not part of the criminal proceeding itself, is not an avenue of relief that the state has a constitutional obligation to provide, and is not a proceeding for which, when the state provides it, the Due Process Clause requires the state to provide a lawyer as well. Thus, the source of petitioner's right to counsel is purely the state's decision to supply petitioner with a lawyer. Given that source of the right to counsel, and the nature of the judicial review proceeding at issue, we conclude that petitioner has no due process right to be assisted by adequate counsel before his petition for review is denied.

---

[11] The lawyer in *Finley* had failed to comply with procedures that the Supreme Court prescribed to assure that, when a criminal defendant's appointed counsel concludes there is no merit to the direct appeal, the defendant's constitutional right to counsel on direct appeal is, nevertheless, protected. *See Anders v. California*, 386 US 738, 87 S Ct 1396, 18 L Ed 2d 493 (1967).

### III.   CONCLUSION

As a matter of state law, petitioner's right to judicial review of the board's decision is strictly contingent upon filing a petition for review within the 60-day deadline. Allowing petitioner to pursue review outside of the jurisdictional time limit is not an appropriate remedy to address a denial of his statutory right to counsel. Nor is he entitled to that relief under the Due Process Clause, given the nature of the judicial review proceeding.

The order of dismissal of the Court of Appeals is affirmed.